**FKM PARTNERSHIP, LTD., A Texas Limited Partnership, Petitioner,**

v.

**BOARD OF REGENTS OF the UNIVERSITY OF HOUSTON SYSTEM, Respondent.**

No. 05–0661.

Supreme Court of Texas.

Argued March 21, 2007.

Decided June 6, 2008.

H. Dixon Montague, Billy Coe Dyer, Gwen J. Samora, Vinson Elkins, L.L.P., Houston, for FKM Partnership, Ltd., A Texas Limited Partnership.

Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Danica Lynn Milios, Office of the Attorney General, Kristofer S. Monson, Assistant Solicitor General, Cavitt Wendlandt, David S. Morales, Office of Attorney General of Texas, Greg Abbott, Atty. Gen., Kent C. Sullivan, First Asst. Atty. Gen., Austin, for Board of Regents of the University of Houston System.

Ken Wright, Kenneth A. Wright, Dallas, for Amicus Curiae Horace H. Elam.

Justice JOHNSON delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, and Justice GREEN joined.

PHIL JOHNSON, Justice.

In this case, we consider whether a trial court retains jurisdiction over a condemnation action after the condemning authority amends its petition to reduce the amount of property to be taken by over ninety-seven percent. We hold that it does. We also hold that the condemning authority is liable for certain fees and expenses to the landowner because the reduction in property condemned is so great as to be in effect a functional dismissal of the original condemnation proceeding.

## I. Factual and Procedural Background

FKM Partnership, Ltd. owns 1.0792 acres (approximately 47,008 square feet) of property along the northeastern edge of the University of Houston campus in Harris County (the larger tract). This roughly triangular tract abuts Calhoun Road for approximately 252 feet on one side and State Highway 35 on the other. In January 1998, the University offered to buy the larger tract, but FKM declined to sell. The University's Board of Regents [1] then met and approved condemnation of the larger tract. In February 1999, the University filed a condemnation petition, setting out the property's intended use "to expand the campus of the University of Houston System." See TEX. PROP.CODE § 21.012.[2] Pursuant to section 21.014, the trial court appointed special commissioners who assessed FKM's damages at $275,000. The University deposited this sum into the court's registry and took possession of the property. See TEX. PROP.CODE § 21.021. FKM timely objected to the commissioners' findings and requested a de novo jury trial. See TEX. PROP.CODE § 21.018.

Beginning with its second amended petition filed in April 2001, the University reduced the size of its proposed acquisition. By its amended pleadings, the University sought only a strip of the larger tract that ran the length of the property line between the larger tract and the Cal-

---

1. The University's Board of Regents is legislatively authorized to take property for the University's use by eminent domain proceedings and is the named party in this case. TEX EDUC.CODE § 111.38. For clarity, we will refer to the University as the condemning authority unless the context requires otherwise.

2. Further references to Texas Property Code provisions will generally be by reference to section and number.

houn Road right-of-way and set out that FKM would retain an easement across the tract for driveway access to Calhoun Road. That tract, being five feet wide and approximately 252 feet long (the smaller tract), contained about 1,260 square feet out of the larger tract. When the University filed its second amended petition, it surrendered possession to FKM of all the larger tract except for the five-foot-wide strip. The University's amended pleadings (collectively, the amended petition) clarified plans for the smaller tract by setting out that the University's intended use of the smaller tract was "to expand the campus of the University of Houston System; specifically, to allow for the conversion of the Calhoun Road right-of-way, in part, to parking for students and faculty" and that improvements to the tract would be limited to landscaping.

FKM responded to the University's change in plans by filing pleadings styled "Defendant's Plea to the Jurisdiction and Motion to Dismiss" (collectively, the motion to dismiss). In its motion to dismiss, FKM alleged that the University had (1) no public necessity for the taking, (2) failed to comply with statutory prerequisites, and (3) failed to negotiate in good faith. The University filed motions for summary judgment.

At the hearing on its motion to dismiss, FKM argued the entire case should be dismissed on jurisdictional grounds because (1) no Board resolution authorized condemnation of the smaller tract, (2) the trial court lacked its ordinary "appellate" jurisdiction in condemnation proceedings because the special commissioners had only considered the value of the larger tract, and (3) the University, by belatedly seeking to condemn only the small tract, had divested the trial court of jurisdiction. The trial court granted FKM's motion and set the issues of fees, expenses, and dam-

ages for jury trial. In its written order granting FKM's motion to dismiss, the court stated that it was granting the motion, the University's condemnation petition and case were dismissed, and FKM was entitled to recover (1) all its fees and expenses under section 21.019(c), and (2) damages for temporary possession under section 21.044. Following trial, the jury determined FKM's (1) reasonable and necessary appraisal fees and expenses were $67,031.71; (2) reasonable and necessary attorneys fees and expenses for preparation and trial were $495,642.05 and for appeal were $150,000; and (3) damages resulting from the University's possession of the property to the time of trial were $323,026. Based on the jury's verdict, the trial court entered judgment in favor of FKM for the amounts found by the jury together with FKM's court costs for a total judgment of $1,048,881.40, subject to reduction for appellate fees if the University did not appeal. The court stated in its judgment that it did not have jurisdiction to proceed under the Fourth Amended Petition and the University did not have the legal right to acquire the smaller tract. The court dismissed the condemnation case.

The court of appeals reversed. It held that the trial court erred in dismissing the University's suit and remanded the case for further proceedings, including determination of fees and expenses incurred in relation to the ninety-seven percent of the larger tract no longer sought to be condemned. 178 S.W.3d 1, 9. Both parties filed petitions for review.

## II. Discussion

### A. Dismissal of the Lawsuit

■ FKM argues that the University, by amending its pleadings to reduce the amount of property it sought to condemn, introduced new compensation issues into

the suit and thereby destroyed the trial court's "appellate" jurisdiction. FKM also argues that the trial court properly dismissed the suit because the University lacked any public necessity for condemning only the smaller tract and because the University failed to negotiate damages as to the smaller tract. We agree with the court of appeals that none of the grounds warranted dismissal.

### 1. Dismissal for Introducing New Compensation Issues

FKM contends that *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788 (1960), limits the trial court's appellate jurisdiction in condemnation cases to those compensation issues raised before the special commissioners. It asserts that when the University so drastically reduced the amount of property sought, it introduced materially different compensation issues—the value of the smaller tract and injury to the remaining tract—than those the special commissioners considered. *See* Tex. Prop.Code §§ 21.041, 21.042.

We recently rejected those arguments in *PR Investments v. State*, 251 S.W.3d 472, 479 (2008), although that case did not involve a change in the area of property taken.[3] In that case, we reviewed *Nelson* and the statutory framework for condemnation proceedings and rejected the view that the trial court can consider only the matters, evidence, and compensation is-

sues presented to the commissioners. We explained that once a party files objections to the commissioners' findings and seeks de novo review in the trial court, pursuant to section 21.018(b), the case is to be tried in the same manner as other civil cases. That includes allowing amendments to pleadings. We held that the trial court's de novo proceeding is not limited to the exact compensation facts and issues presented to the commissioners. *Id.* at 475.

In *Nelson* and earlier in *Texas Power & Light Co. v. Cole*, 158 Tex. 495, 313 S.W.2d 524 (1958), we recognized that a condemnor can, after the administrative phase, reduce the amount of property it seeks and that such a change does not divest the trial court of jurisdiction. *Nelson*, 334 S.W.2d at 790; *Cole*, 313 S.W.2d at 529–31; *see also Thompson v. Janes*, 151 Tex. 495, 251 S.W.2d 953, 954–55 (1952) ("[T]he condemning agency is accorded the right to dismiss as to a portion of the land when it decides that its purpose may be accomplished with less land than was initially sought."). FKM contends that these cases only allow such an amendment if the landowner will not be prejudiced. We agree that *Nelson* and *Cole* contain language to the effect that amendment is allowed if it will not prejudice the landowner.[4] We do not think, however, that FKM established such prejudice as would preclude the University from amending its pleadings. First, a landown-

---

**3.** We note that this case does not involve a situation in which the condemning authority attempts to increase the amount of property taken by amending its pleadings after the commissioners' hearing. We express no opinion on such a situation.

**4.** *Nelson,* 334 S.W.2d at 790 ("Where the landowner will not be prejudiced, the condemning authority may also amend the description and abandon part of the land or rights which it had previously sought to condemn."); *Cole* 313 S.W.2d at 530–31 ("Un-

doubtedly a condemnor has the right to dismiss ... when this may be done without injury to the landowner.... A condemnor should not be required to take more land than it needs [to] secure unnecessary easement rights, and prior to confirmation of the special commissioners' award or other judgment of the Court, the condemning authority, in the absence of some showing of prejudice to the landowner (which we here fail to find) should be allowed to abandon such unnecessary lands or rights.").

er ordinarily will not be harmed if a condemning authority decides to take less land since the landowner gets to keep the land it did not want to sell to begin with, and the landowner is entitled to be fully compensated for damages suffered as a result of whatever property is eventually taken.[5] Except for a small strip of land the University now seeks to condemn, FKM gets to keep the property it refused to sell the University. In regard to expenses FKM incurred in litigating because the University originally sought to take the larger tract, FKM may recover those expenses the Legislature has provided for, as we discuss below.[6] Even if recovery of expenses is unavailable, however, FKM does not persuade us that a condemnor may not amend its petition to seek a smaller tract. Such a rule would restrict the use of amended petitions in condemnation proceedings, contrary to section 21.018(b)'s specification that suit is to proceed "in the same manner as other civil causes." As we noted in PR Investments, "under a trial conducted 'in the same manner as other civil cases,' the plaintiff is allowed to amend the petition, and we permitted in Nelson an agreed trial amendment made after the special commissioners' hearing." 251 S.W.3d at 476. The court of appeals in this case correctly noted that as in "other civil cases, an eminent domain proceeding is subject to the rules of civil procedure," and these rules "permit parties to amend their pleadings and also to dismiss some or all of their claims." 178 S.W.3d at 5 (citing Rose v. State, 497 S.W.2d 444, 445–46 (Tex.1973)); see also City of Houston v. Biggers, 380 S.W.2d 700, 705 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.) ("Attorneys fees, costs of experts and other expenses in preparation for trial are merely incidental expenses.... The incurring of them is not such prejudice as to require the condemnor to take property it decides it can do without.").

We also disagree with FKM that it was prejudiced because the amended petition "depriv[ed] FKM of the statutorily-mandated hearing before the special commissioners on the issues of compensation." PR Investments necessarily rejects this argument, by our holding that a change in compensation facts after the special commissioners' award generally does not destroy trial court jurisdiction over a properly-filed condemnation case. FKM separately argues that even if the trial court is not required to dismiss the case due to a change in compensation issues, it should have discretion to dismiss. We expressly rejected this argument in PR Investments, 251 S.W.3d at 479.

■ There may be circumstances under which a landowner could establish prejudice of the sort that would preclude a condemning authority from seeking a smaller tract, such as if the condemnor had taken possession of the larger tract and irreparably altered it in a manner that would be injurious to the landowner. For example, in Cole, we distinguished an earlier case where the condemning authority was completing a dam and reservoir that would submerge the land in issue. 313 S.W.2d at 529 (discussing Brazos River

5. See Sw. Bell Tel. Co. v. West, 417 S.W.2d 297, 300 (Tex.Civ.App.-Tyler 1967, writ ref'd n.r.e.) (finding it "inconceivable to us that the landowners could have been prejudiced" when the condemning authority, by amended petition, "simply relinquished and abandoned certain rights to which appellant (condemnor) would have been entitled under the easement description contained in the original petition").

6. Of course, under certain circumstances, expenses may be recovered for reasons not at issue here, such as sanctions for litigation conduct. See, e.g., Tex.R. Civ. P. 13.

*Conservation & Reclamation Dist. v. Allen,* 141 Tex. 208, 171 S.W.2d 842 (1943)). And in *Thompson,* we held that a landowner would be prejudiced if a condemnor reduced the amount of land sought to be condemned but did not relinquish the part no longer sought to be condemned. 252 S.W.2d at 955. This case does not present a similar situation. There is no allegation here that the University has physically changed the land, much less permanently or injuriously altered it. Further, since the University filed its second amended petition in 2001, FKM has had possession of the entire property except for the five foot strip.

### 2. Dismissal for Lack of a Public Necessity

In its motion to dismiss, FKM also contended that the University did not have a public necessity for taking the smaller tract. There was no evidence introduced at the hearing on FKM's motion, but evidence filed in support of and in opposition to the University's motion for summary judgment was before the court.[7]

█ The trial court is allowed to conduct a hearing on a plea to the jurisdiction or motion to dismiss for lack of jurisdiction in a manner similar to how it hears a summary judgment motion, and may consider affidavits and other summary judgment-type evidence. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). If the evidence presents a fact question on the jurisdictional issue, the motion should be denied. *See id.* at 228.

Here there was evidence before the trial court that the University had a public necessity for the taking. Education Code section 111.38, specifically applicable to the University, provides that "[t]he board [of the University] has the power of eminent domain to acquire for the use of the [U]niversity any land necessary and proper for carrying out its purposes as a state-supported institution of higher education." FKM claimed that the reason stated in the minutes of the February 19, 1998 Board meeting for the condemnation—that the property was needed to obtain a right-of-way over State Highway 35—was false because the University had already obtained such right-of-way. However, the University offered evidence that (1) the Board agenda for this item also provided that the acquisition of the larger tract in conjunction with two others in the same area "will complete the acquisition of the east campus areas," and (2) the Board met and approved the acquisition of the property for multiple reasons, including not only the right-of-way, but also as part of an established Master Plan, the need to address a campus parking shortage, and the University's need for the tract as a future building site.

FKM claimed that Ron Shoup, the University's director of campus planning and

---

7. FKM contends that the trial court conducted a "trial" on the issue of public necessity and that the University failed to carry its burden of proof on this issue. However, the record shows that the trial court granted FKM's motion to dismiss *before* trial, without taking any testimony. The motion to dismiss was discussed at an August 29, 2002 hearing. The University and FKM stipulated that evidence submitted as to the University's summary judgment motion could also be considered by the court in ruling on FKM's motion to dismiss. The court then reset the case for the week of November 18. The next court proceeding occurred on November 20. It began with the court asking, "[w]hat motions will we be hearing today," and the parties advised the court that FKM's motion to dismiss was before it. The parties argued the motion, which the court granted without taking testimony. The court proceeded months later with a jury trial on FKM's issues of fees and expenses.

real estate, stated in a memorandum that the property was not needed, but the University offered the affidavit of a higher-ranking official, Vice Chancellor Harris, who stated that Shoup was not authorized to speak for or bind the University on this matter. The University further submitted the affidavit of Shoup himself, who attested that his statement had been misinterpreted, that it was made in the context of an earlier proposal for FKM to develop the property for retail use, and that based on his knowledge of the University's needs, the acquisition of the FKM property "constituted a public necessity in that it provided the University with land upon which to construct needed buildings, was needed to enable the closure of a busy thoroughfare, i.e., Calhoun Road, and enabled the University to establish an architecturally and aesthetically desirable eastern border to its campus."[8] We further note that the Shoup memorandum was equivocal, stating at one point that the University did not need the FKM property, but then qualifying that statement by stating "[t]his is *not* to say it *could not* be utilized." Shoup testified in his deposition that the FKM tract was part of an ongoing eastward expansion project, that proper-

ties were acquired as part of this plan "for future expansion and future growth" of the University "and very wisely so," and that the plan for the FKM tract was that it "would be landscaped with parking and potentially an entrance there." A memorandum from an associate vice chancellor stated that the tract was needed to provide a "clearly bounded eastern edge" to the campus.

The Board's determination that the University needed the larger tract for a legitimate university purpose raised a fact issue regarding FKM's motion to dismiss. Where a statute vests a governmental agency with discretionary authority to condemn property, we have held that the agency's determination of public necessity is presumptively correct, absent proof by the landowner of the agency's fraud or proof that the condemning authority acted arbitrarily or capriciously. *See Hous. Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 88 (1940) ("The law is well established in this state that where the power of eminent domain is granted, a determination by the condemnor of the necessity for acquiring certain property is conclusive in the absence of fraud.")[9] FKM does not challenge this

---

8. FKM claims that under a 1985 Agency Interaction Agreement the University already had a right-of-way over Calhoun Road and that the road had already been closed, while the University claims and offered evidence that condemnation of the FKM tract was needed to convert Calhoun Road to planned public uses by the University. The University claims that, under section 51.904 of the Education Code, even though Calhoun Road is closed at one end, the University must still condemn all the land along that road before it can convert it to a university street with parking, in accordance with its Master Plan. Evidence submitted with the summary judgment motion and motion to dismiss does not establish who is correct on this issue. Even assuming that FKM is correct, however, closing Calhoun Road was just one of several reasons

on which the University relied and offered evidence for public necessity.

9. *See also Stone v. City of Wylie*, 34 S.W.2d 842, 844 (Tex. Comm'n App.1931, judgm't adopted) (holding that once the city selected a site for a sewage plant, "the right of a citizen to question the soundness of the judgment of the governing body of a city as to the existing necessity for locating such a plant at a particular place is foreclosed, and the court is without power to review the same except where it be made to appear that such officials acted arbitrarily or capriciously"); *Whittington v. City of Austin*, 174 S.W.3d 889, 898 (Tex.App.-Austin 2005, pet. denied) ("Once the presumption of necessity arises, the defendant can contest the fact of necessity only by establishing affirmative defenses such as fraud (that, contrary to the ostensible public use,

standard. FKM's motion to dismiss and evidence before the trial court in connection with that motion were not conclusive proof that the University's determination of public necessity was fraudulent, arbitrary, or capricious.

■■■ FKM argues that the suit was properly dismissed because the University "failed to offer any proof that its governing board had declared a public necessity for the taking of the five-foot wide strip of property sought." We agree with FKM that Education Code section 111.38 requires the Board to authorize condemnation of property, since section 111.38 only grants the power of eminent domain to the Board itself.[10] FKM points out that at the hearing on its motion to dismiss the University's counsel conceded that the board did not pass a separate resolution specifically authorizing condemnation of the smaller tract. We do not agree with FKM, however, that a separate Board resolution is necessary every time a condemnor decides to acquire less property than it originally sought. FKM does not reference a statutory or procedural requirement for its position, and a resolution authorizing condemnation of a whole tract of land necessarily authorizes condemnation of the separate parts that comprise the whole. We see no reason that the Board could not vote to condemn a tract of land for public use then depend on and allow its agents, subject to the Board's supervision and approval, to determine that less than the whole tract would suffice to fulfill the Board's purposes or would fit within the University's budget. And if the Board does so, then it could reasonably depend on the agents to negotiate for less than the whole tract or, if suit has been filed as in this case, amend its condemnation petition to seek a smaller tract. There is no indication in this record that the Board has ever disavowed the actions of University officers and attorneys handling the condemnation proceeding. The University's counsel represented to the trial court at the hearing on the motion to dismiss that the court would "hear testimony that at some point the Board of Regents made the determination that they couldn't afford the risk [of seeking the whole tract] because of the rapidly increasing numbers put on the property" by FKM. The Board resolution authorizing condemnation of the larger tract, together with the other evidence described above, is evidence that condemnation of the smaller portion of the property was "necessary and proper for carrying out the purposes of the University of Houston System as a state-supported institution of higher education" under section 111.38 of the Education Code. And we have noted, " '[w]hen the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.' " *Higginbotham*, 143 S.W.2d at 89 (quoting *Imperial Irrigation Co. v. Jayne*, 104 Tex. 395, 138 S.W. 575, 587 (1911)); *see also Boom Co. v. Patterson*, 98 U.S. 403, 406, 25 L.Ed. 206 (1878).

■ If a landowner can establish that the ultimate taking of a smaller tract of land that comprised part of a larger tract originally sought to be condemned is fraudulent, without a true public purpose, and intended solely to avoid fully dismissing the entire condemnation proceeding so as to avoid paying the landowner's expenses under statutory provisions, then

---

the taking would actually confer only a private benefit), bad faith, or arbitrariness.").

**10.** Section 111.38 provides in relevant part: "The board has the power of eminent domain to acquire for the use of the university any land necessary and proper for carrying out its purposes as a state-supported institution of higher education."

the landowner could be entitled to dismissal. But the evidence before the trial court at the time it heard FKM's motions did not conclusively establish these matters so as to warrant dismissal of the proceeding.

### 3. Dismissal for Failure to Negotiate Purchase of Smaller Tract

FKM contends the trial court was authorized to dismiss the suit because the University failed to negotiate with FKM to purchase the smaller tract. We disagree.

 FKM does not claim that the University did not offer to purchase the larger tract prior to filing suit. The Property Code requires that the condemning authority state in its petition that the authority and the property owner are unable to agree on damages. TEX. PROP.CODE § 21.012(b)(4). The provision clearly contemplates that the condemnor negotiate with the property owner prior to filing suit. However, the Property Code does not require a condemning authority to continue negotiating after suit is filed. FKM also does not refer us to a rule by which "other civil suits" are tried that requires negotiation after pleadings are amended to seek different relief from that sought in preceding pleadings. There is no basis for a ruling that the University's failure to negotiate after amending its petition divested the trial court of jurisdiction and authorized dismissal of the suit.

### B. Award of Expenses

The court of appeals, referencing section 21.019 generally, reversed the trial court's award to FKM of fees and expenses and remanded for determination of fees and expenses related to the ninety-seven percent of the larger tract the University dismissed from the suit. FKM contends the trial court properly awarded the fees and expenses, including both trial and appellate attorney's fees. It argues that the trial court properly awarded such fees under section 21.019(c) because the trial court properly granted FKM's motion to dismiss. It also argues that the award was proper under section 21.019(b) because the University in effect abandoned its original proceeding, and even if it did not abandon the proceeding, the fees and expenses all related to the ninety-seven percent of the property no longer sought by the University. As to the latter argument, FKM reasons that if the University had only sought the smaller tract to begin with, FKM would not have incurred any of the fees and expenses. In response, the University does not contend that section 21.019 is not a waiver of its immunity, but rather that it is immune from FKM's claims because the claims do not fit within the terms of the statutory waiver.

### 1. Expenses Under Section 21.019(c)

Section 21.019(c) provides:

A court that hears and grants a motion to dismiss a condemnation proceeding made by a property owner seeking a judicial denial of the right to condemn or that otherwise renders a judgment denying the right to condemn may make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing or judgment.

 FKM's motion to dismiss asserted that the University introduced new compensation issues by its amendment, lacked a public necessity for the property, and failed to negotiate for the smaller tract. The trial court granted the motion without specifying its grounds. As we have set out above, however, none of the grounds urged were a valid basis for concluding the University did not have the right to condemn either the larger or smaller tract. The

plain language of section 21.019(c) requires an order or judgment denying the right of the authority to condemn the property before fees and expenses can be recovered by a property owner. FKM does not assert any proper basis on which the trial court's order of dismissal could have denied the University's right to condemn the property. Accordingly, FKM could not recover fees and expenses under section 21.019(c).

### 2. Expenses Under Section 21.019(b)

In the alternative, FKM contends that although the University labeled its pleadings as amended petitions instead of motions to dismiss, the pleadings were in substance and effect the same as motions to dismiss, at least to ninety-seven percent of the tract, which in any event entitles FKM to fees and expenses. FKM bases its claim on a combination of two factors. The first is the drastic difference in size between the original tract of land and the smaller tract sought to be condemned by the amended petition—the original tract contained 47,008 square feet whereas the smaller tract contained 1,260 square feet. The second is that the University alleged it intended to use the smaller tract to expand the University campus, but specifically pleaded that (1) the only improvements to the tract would be landscaping, and (2) an appurtenant access easement across the tract and along FKM's frontage would be reserved to FKM for driveway access to Calhoun Road. The easement would run with FKM's land.

The University relies on the plain language of the statute to refute an award of fees and expenses in two ways. It asserts that section 21.019(b) is facially inapplicable because the University never moved to dismiss the condemnation action and the trial court did not have a hearing on or grant a motion to dismiss. And although the University agrees that the pleading's effect and not its title determines its nature, the effect of the pleading, it argues, must be to dismiss the entire proceeding, as opposed to only part of the original tract.

Section 21.019(b) is applicable to dismissals requested by the condemning authority. It provides:

A court that hears and grants a motion to dismiss a condemnation proceeding made by a condemnor under Subsection (a) shall make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing.

Section 21.019(a) provides that "[a] party that files a condemnation petition *may* move to dismiss the proceedings, and the court shall conduct a hearing on the motion." (emphasis added).

 We first address the question of whether a landowner must file a formal motion that the trial court grants before the right to fees and expenses arises under this subsection. If a party to a condemnation proceeding files a timely and proper objection to the special commissioners' award, the case shall be tried "in the same manner as other civil causes." TEX. PROP. CODE § 21.018(b). In civil causes generally, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed. No hearing is necessary to effect the nonsuit. Even if the nonsuit applies to the entire case, the nonsuit or voluntary dismissal is effective when notice is filed or announced in open court. Entry of an order granting the nonsuit is ministerial. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz,* 195 S.W.3d 98, 100 (Tex.2006) ("[A] nonsuit

extinguishes a case or controversy from 'the moment the motion is filed' or an oral motion is made in open court."). Our rules provide that amended pleadings and their contents take the place of prior pleadings. TEX.R. CIV. P. 65. So, causes of action not contained in amended pleadings are effectively dismissed at the time the amended pleading is filed, except for possible circumstances not present here. *See Ortiz v. Collins*, 203 S.W.3d 414, 421 n. 4 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (amended pleading specifically reserved right to re-assert or appeal trial court order dismissing causes of action and which causes of action were, therefore, not pleaded in the amended pleading).

■■■ To decide the issue we must reconcile statutory language that facially allows a motion and hearing to dismiss, *see* section 21.019 ("[A] party that files a condemnation petition *may* move to dismiss." (emphasis added)), with language that results in a condemnor being allowed to dismiss its claim by amending pleadings as occurs in other civil cases, *see* TEX. PROP. CODE § 21.018(b) ("[T]he court *shall* cite the adverse party and try the case in the same manner as other civil cases." (emphasis added)). In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results. *See* TEX. GOV'T CODE § 311.011; *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004). We presume the Legislature intended a just and reasonable result by

enacting the statute. TEX. GOV'T CODE § 311.021(3).

We find no guidance in legislative history as to how the Legislature intended sections 21.018(b) and 21.019 to interact in regard to this question. Early eminent domain statutes specified that condemnation trials were to be conducted as were other civil causes. *See* Act approved Feb. 8, 1860, 8th Leg., R.S., ch. 51, § 2, 1860 Tex. Gen. Laws 60, 61–62, *reprinted in 4 H.P.N. Gammel, The Laws of Texas 1822– 1897*, at 1422, 1423–24 (Austin, Gammel Book Co. 1898) ("if either party be dissatisfied with the decision of said Commissioners, he or they shall have the right to file a petition in the District Court, as in ordinary cases, reciting the cause of action, and the failure to agree, and such suit shall proceed to judgment as in ordinary cases."). Section 21.018(b) includes the substance of that language. Thus, we seek legislative intent in the plain words of the statutory provisions, mindful that we presume the Legislature to have intended a just and reasonable result, and not an absurd one.

■■■ In construing sections 21.018(b) and 21.019 together, it seems to us that the Legislature intended section 21.019, with language *allowing* a condemnor to file a dismissal motion, to assure notice and a hearing before entry of an order dismissing a condemnation proceeding. That is a just and reasonable result. For example, if a condemnor desires to dismiss the entire condemnation proceeding, the landowner has the right to a hearing to seek statutorily allowed fees and expenses. On the other hand, a condemnor that decides to dismiss the entire proceeding has the right to a hearing on the amount of fees and expenses that might be assessed against it. But it also seems to us that having provided for notice and a hearing under these circumstances, the Legislature

did not intend to override the directive of section 21.018(b), that condemnation cases should be tried as other civil cases—including, we believe, the procedural aspect of voluntarily nonsuiting claims so long as the nonsuit does not prejudice other parties. The two sections are compatible when so viewed. Moreover, construing the statutory framework to deprive condemnors the right to nonsuit a claim by filing a notice of nonsuit or an amended pleading could lead to an absurd result. For example, could a trial court deny a motion by a condemning authority to dismiss the proceeding, and thereby require the authority to take property it did not want to take? Clearly it could not. *Thompson*, 251 S.W.2d at 954 ("[A]n agency clothed with the power of eminent domain may not be forced to take land against its will."). We see no purpose in putting form over substance by requiring a motion and order granting the motion, so long as the court's judgment does not prejudice or deprive notice and hearing to either the condemnor or the landowner. Construing sections 21.018(b) and 21.019 in this manner, we believe, reflects the Legislature's intent that although condemnors may file motions to dismiss entire proceedings should they desire, they also have the same procedural rights as plaintiffs in other civil actions to dismiss claims by filing amended pleadings or by notice of dismissal. Of course, neither party may use a dismissal to deprive the other party of any hearing necessary to protect its interests.

■ Thus, the University could have dismissed all or part of its claim by amending its petition, subject to FKM's right to claim fees and expenses pursuant to statute. Tex.R. Civ. P. 162; *see Cole*, 313 S.W.2d at 530. Further, it is clear the University intended to omit the larger tract from its amended pleadings and condemn only the smaller tract. Accordingly, the amended pleadings effected a voluntary dismissal of the University's claim as to that part of the larger tract not included in the amended pleading. *See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex.1972).

■ Whether section 21.019(b) allows recovery of fees and expenses should turn on a common-sense view of events rather than an excessively formalistic, mechanical approach of looking only for particular words in the label on the condemnor's pleading or in the pleading itself. This is the approach embodied in procedures for trying civil cases generally. Texas Rule of Civil Procedure 71 provides that "[w]hen a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated." We believe that incorporating such flexible and just procedures is what the Legislature intended by requiring condemnation cases to be tried as other civil cases, *see* section 21.018(b), and by providing protection for landowners against the burden of fees and expenses when an entity lodges a condemnation proceeding against it and then abandons the action. In this case, the availability of fees and expenses should not turn on whether the University accomplished its abandonment by omission from an amended petition or a document labeled "motion to dismiss."

■ We cannot agree with the University that the plain wording of section 21.019(b) always requires complete and strict dismissal of the entire action before the landowner's right to fees and expenses arises. As the University points out, the statute does not make reference to a "partial dismissal," but it likewise does not specifically provide that the condemnor must move to dismiss the condemnation proceeding in its entirety or use similar all-inclusive language. It simply makes reference to dismissal of "a condemnation

proceeding." We think the Legislature's language is sufficiently flexible to encompass the uncommon factual circumstances presented in this case.[11]

■ Section 21.019(b) provides for waiver of sovereign immunity, a point the University does not dispute. We have stated generally that waivers of sovereign immunity must be unequivocal, although they need not be models of perfect clarity. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003). We have also recognized that the protections given in the statutory scheme regulating condemnation proceedings must be "liberally construed for the benefit of the landowner." *John v. State,* 826 S.W.2d 138, 140 (Tex.1992). We should not construe the fee-shifting statute so woodenly as to reach an absurd result, *see Loutzenhiser,* 140 S.W.3d at 356, or a result that could essentially render it inoperable, *see Ex Parte Pruitt,* 551 S.W.2d 706, 709 (1977) ("Statutes should be read as a whole and construed to give meaning and purpose to every part.").

One court of appeals has held, under a predecessor statute to section 21.019, that an amended petition seeking a smaller tract did not constitute an implied abandonment of the proceeding entitling the landowner to recover expenses. *Zucht v. City of San Antonio,* 698 S.W.2d 168, 170 (Tex.App.-San Antonio 1984, no writ) (interpreting Act of May 28, 1969, 61st Leg., R.S., ch. 772, § 1, 1969 Tex. Gen. Laws 2293, *repealed by* Act of May 24, 1983,

68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729, providing that the landowner shall recover expenses "[w]here a plaintiff ... desires to dismiss, abandon the proceedings, or refuse the jury verdict"). On the other hand, in *State v. Tamminga,* 928 S.W.2d 737 (Tex.App.-Waco 1996, no writ), the court of appeals considered a situation where the State originally brought three separate actions to condemn three separate tracts of property. The trial court consolidated the actions, and the State later amended its petition in the consolidated action to exclude one of the tracts. The court of appeals held that the amendment constituted a motion to dismiss "within the meaning of Section 21.019" as to the tract excluded. *Id.* at 740.

Other states have statutes similar to the Texas statute that provide for recovery of expenses but do not specifically address instances in which abandonment by the condemning authority is less than absolute and complete abandonment. In many states, courts have not construed the statutes. Decisions in those states that have interpreted their statutes have construed them in different ways. For example, the Utah Supreme Court has held that landowner expenses can only be awarded when the condemnor dismisses the proceedings entirely. *Cornish Town v. Koller,* 817 P.2d 305, 314–15 (Utah 1991). However, courts in at least six other states and the former Hawai'i Territory have held that landowner expenses are sometimes recov-

---

11. The University also says a fee-shifting provision of the Model Eminent Domain Code should persuade us that an award of fees under section 21.019 is unavailable for a "partial dismissal" of the proceedings. Under section 1303(b) of this Code, fees are available "[i]f the scope of the property to be taken is reduced as the result of (1) a partial dismissal, (2) a dismissal of one or more plaintiff, or (3) a final judgment determining that the plaintiffs cannot take part of the property originally sought to be taken." Model Eminent Domain Code § 1303(b) (1974). We are unpersuaded. Pointing out that a model code expressly allows fees for partial dismissals, no matter how small, does not go very far in establishing that a differently worded Texas statute never allows such fees, no matter how radically the proposed taking is reduced.

erable if the condemnor amends its complaint to reduce or alter the property interests it seeks.[12]

■ We agree with the view that statutes such as the Texas statute sometimes allow recovery of expenses when the condemning authority amends its pleadings to seek less than one hundred percent of the originally-sought property. We hold that an amended condemnation petition dismisses the proceedings within the meaning of section 21.019(b) even if the condemnor does not completely dismiss or abandon the proceedings, but continues them in such manner that the amendment functionally abandons the original condemnation claim and asserts a different claim. To hold otherwise would mean that a condemning authority could artfully amend its petition to condemn only an extremely small fraction of the original area sought and avoid liability for fees and expenses under section 21.019(b). FKM claims the amended petition here is designed to do just that—to allow the University to avoid the statutory requirement that it reimburse costs and fees to FKM if it dismisses the proceeding—and section 21.019(b) reflects legislative intent that landowners re-

---

**12.** *See City of Sedona v. Devol*, 196 Ariz. 178, 993 P.2d 1142, 1144, 1145–46 (Ct.App.1999) (holding, under statute allowing landowner to recover expenses if "[t]he proceeding is abandoned by the acquiring agency," that expenses are not recoverable when the agency merely amends its complaint "to adjust the scope of its proposed condemnation," but expenses are recoverable if the amended complaint "changes the nature of the action so completely as to amount to a functional, if not procedural, abandonment of the prior action and an institution of a new one in its place"); *County of Kern v. Galatas*, 200 Cal.App.2d 353, 19 Cal.Rptr. 348, 349–51 (1962) (holding, under then-applicable statute providing for recovery of expenses when condemnor, through "express or implied" conduct, elects to "abandon the proceedings," that amended complaint reducing property interest condemnor sought amounted to partial abandonment for which expenses were recoverable); *Dep't of Pub. Works v. Lanter*, 15 Ill.2d 33, 153 N.E.2d 552, 554–55 (1958) (holding, under statute providing for award of expenses to landowner when condemnor "shall dismiss said petition," landowner could recover expenses where condemnor amended petition to abandon access rights sought in original petition and also sought to take additional property, which were deemed "tantamount to a dismissal of the original petition" due to the scope of amendment and prolonged inaction on original petition); *State v. Miller Home Dev., Inc.*, 243 Minn. 1, 65 N.W.2d 900, 904–05 (1954) (recognizing, under statute providing for award of expenses to landowner where "the proceeding is so dismissed or the same is discontinued" by the condemnor, that

"it has been held that the dismissal of the proceeding as to one of several parcels of land, or as to part of a parcel, entitled the owner thereof to the benefits of this statutory provision"); *Montgomery County v. McQuary*, 26 Ohio Misc. 239, 265 N.E.2d 812, 814 (1971) (holding, under statute providing that when condemning authority elects to "abandon the proceedings" the court shall award landowner expenses "for such amounts as the court deems just," landowner was entitled to recovery of expenses when county amended condemnation complaint to alter course of easements, which was "tantamount to an abandonment of the original proceedings to take a particular portion of defendant's land"); *State v. Chelsea Butane Co.*, 91 P.3d 656, 658, 661 (Okla.Civ.App.2004) (holding, under statute providing for recovery of expenses when condemnation "proceeding is abandoned," that amended petition changing property interest condemnor seeks can amount to abandonment for which expenses are sometimes recoverable, depending on balancing test that considers "(1) whether the case was dismissed voluntarily; (2) the passage of time or how long the case has been pending; (3) changes in the quantum or description of the property taken; and, (4) the motive and reasonableness of the condemnor's action in amending the petition"); *Akana v. Damon*, 42 Haw. 415, 1958 WL 9919, at *7–12 (Hawai'i Terr.1958) (holding, where condemnor amended condemnation complaint to exclude certain leasehold interests of tenants, and where statute "allows damages upon abandonment of proceeding," tenants were entitled to recover expenses occasioned by partial abandonment).

cover fees and expenses when a condemning authority abandons its condemnation. We do not ascribe to the Legislature an intent to allow a condemnor to circumvent the statutory provision allowing fees and expenses to landowners by abandoning all but such a comparatively insignificant part of the original condemnation claim that the condemnation proceeding is effectively a different claim.

■■■■ There is no bright line that can be drawn here, and we add that section 21.019(b) does not waive a condemning authority's immunity from liability for fees and expenses when just *any* downward adjustment in the size of the condemned property occurs. Other factors, such as whether the planned use of the smaller tract sought by amendment differs significantly from the tract originally sought and whether the potential future uses of the different tracts are similar, may be probative on the issue, in addition to the size of the reduced claim. In this case, the reduction in property rights to be taken constitutes an overwhelming part of the originally-sought property. When the reduction is considered together with the potential and expressed planned uses for the different tracts, we conclude that, as a matter of law, the University effectively abandoned its original claim and FKM is entitled to recover fees and expenses pursuant to section 21.019(b).

■■■■ We have no quarrel with the dissent's reading of the statutory language. We simply disagree that the Legislature could have intended to allow a landowner such as FKM to recover fees and expenses only if a condemning authority files a formal motion to dismiss as to every small part of the originally-sought land. As we note above, the Legislature has long prescribed that condemnation cases be tried as other civil cases, thus incorporating the mechanism of dismissal

by amending pleadings and notice of dismissal so long as another party is not prejudiced. That fulfills the purpose of the statutory language precluding a condemnor from discontinuing a proceeding in some manner without a court and the landowner being able to examine the circumstances of the former claim to determine if fees and expenses are recoverable by the landowner. The Legislature has directed courts to presume it intended a just and reasonable result by its enactments. *See* Tex. Gov't Code § 311.021(3). If it is just and reasonable for landowners to obtain relief from fees and expenses they incur in condemnation proceedings that are fully dismissed, surely it is so if the functional effect of an amended pleading by a condemnor is dismissal of the original proceeding while effectively pursuing a different claim. However, we agree with the dissent that the Legislature plainly has not provided for partial or full recovery of fees and expenses merely because a partial dismissal occurs.

■■■■ Even though the University effectively abandoned its original proceeding, FKM was not entitled to *all* its fees and expenses. Section 21.019(b) provides that a property owner is allowed to recover fees and expenses "incurred by the property owner to the date of the hearing." By the plain language of the statute, a landowner is not entitled to recover fees and expenses, such as appellate fees incurred after the dismissal hearing. Furthermore, the recoverable fees and expenses are only those fees and expenses the landowner would not have incurred had the smaller tract been sought originally instead of the larger tract.

### 3. Damages Under Section 21.044

■■■■ The trial court separately awarded damages of $323,026 under section 21.044 for the University's temporary pos-

session of FKM's land. The court of appeals agreed that such fees and expenses were recoverable, and instructed the trial court to determine those damages on remand. 178 S.W.3d at 7.

Section 21.044(a) states:

If a court finally determines that a condemnor who has taken possession of property pending litigation did not have the right to condemn the property, the court may award to the property owner the damages that resulted from the temporary possession.

The statute plainly allows damages only if the condemnor took possession of property it did not have the *right* to condemn. FKM did not establish that, as a matter of law, the University did not have the right to condemn either the larger tract it originally sought or the smaller tract it later sought. There was evidence before the trial court that the University had the right to condemn both the larger and the smaller tracts. Amending its petition to change the amount of property sought was not proof that the University did not have the right to condemn either tract. Accordingly, FKM was not entitled to judgment for damages under section 21.044. The courts below erred in holding otherwise.

## III. Conclusion

We affirm the court of appeals' judgment reversing the judgment of the trial court and remanding the case for further proceedings. The proceedings following

remand should be consistent with this opinion.

Justice WILLETT filed an opinion concurring in part and dissenting in part.

Justice WILLETT, concurring in part and dissenting in part.

I agree with all but Part II(B)(2) of the Court's opinion, which disregards the language of the governing statute. The unambiguous text of Property Code Section 21.019(b) provides no basis for awarding fees and expenses to FKM. I understand perfectly the Court's concern about condemnor abuse, but if the legal deck is stacked, the Legislature should reshuffle the equities, not us.

Fee-shifting statutes must contain express authorization,[1] particularly those effecting a waiver of sovereign immunity.[2] The Court accepts FKM's extra-statutory argument that the University's amended petition scaling back the acquisition's size effected a partial dismissal of the condemnation suit, thus entitling FKM to fees and expenses under Section 21.019(b). By its very language, however, that fee-shifting provision does not apply here.

Section 21.019 begins "[a] party that files a condemnation petition may move to dismiss the proceedings, and the court shall conduct a hearing on the motion."[3] Subsection (b) reads:

A court that hears and grants a motion to dismiss a condemnation proceeding made by a condemnor under Subsection

---

1. *See, e.g., Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex.1999).

2. As to immunity waivers, two things are axiomatic: (1) they must be clear and unambiguous, TEX. GOV'T CODE § 311.034; *Tooke v. City of Mexia,* 197 S.W.3d 325, 329 n. 2, 333 (Tex.2006); and (2) uncertainties over legislative consent must be resolved in favor of retaining immunity, *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003).

The Court infers waiver from Section 21.019(b), and while I agree the statute is clear, its clarity cuts in a direction contrary to the Court's holding. At the very least, Section 21.019(b) is a slender reed upon which to conclude the Legislature waived immunity beyond all doubt.

3. TEX. PROP.CODE § 21.019(a).

(a) shall make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing.[4]

We must take the Legislature's language as we find it and not judicially rewrite the statute under the guise of construction, however unjust or imperfect we believe the statute to be.[5] Our confined role is to interpret unambiguous text according to its terms, reading the Legislature's words as enacted, not revising them as desired.[6] In departing from our oft-professed adherence to plain language, the Court has treated the University to a classic Inspector Clouseau moment.[7]

On its face Section 21.019(b) requires three things, not one of which happened in this case:

1. a motion to dismiss filed by the condemning authority,
2. a hearing on the motion, and
3. an order granting the motion.

None of these procedural steps occurred: no motion, no hearing, no order. I would apply the statute as written, and absent these mandatory triggering events, a court has no authority to award fees and expenses.

Nor can Section 21.019 be construed as encompassing a "partial dismissal" of the proceeding. Subsection (a) covers a motion "to dismiss the proceedings," and Subsection (b) applies where the court grants the "motion to dismiss a condemnation proceeding." Similarly, Subsection (c) covers "a motion to dismiss a condemnation proceeding" filed by the landowner. The use of the term "condemnation proceeding" throughout the rest of Chapter 21 confirms the Legislature means the entire case.[8] The statute speaks to total dismissal and makes no provision for anything less.

The Legislature could, of course, enact a fee provision that covers partial dismissals. Several states have done so,[9] and Section 1303(b) of the Model Eminent Domain Code authorizes fee shifting "[i]f the scope of the property to be taken is reduced as the result of ... a partial dismissal."[10] In that instance, the model code provides "the court shall award the defendant the portion of his litigation expenses attributable to the property within the scope of the

---

**4.** § 21.019(b).

**5.** *See Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920).

**6.** *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651–52 (Tex.2006).

**7.**
Clouseau: Does your dog bite?
Hotel Clerk: No.
Clouseau: [bowing down to pet the dog] Nice doggie. [dog barks and bites Clouseau on the hand]
Clouseau: I thought you said your dog did not bite!
Hotel Clerk: That is not my dog.
The Pink Panther Strikes Again (United Artists 1976), *available at* http://youtube.com/watch?v=SXn2QVipK2o.

**8.** The term is used repeatedly throughout Chapter 21 in provisions related to everything from initial filing, Tex. Prop.Code § 21.012, to venue, § 21.013, to the special commissioners' procedures, §§ 21.042(a), .0421(a), .047, to trial to the court, § 21.018, to the procedure governing reinstatement of condemnation proceedings, § 21.020, to the rules covering possession of the land pending litigation, § 21.021, to the procedures governing final judgments, §§ 21.061–.063. Each and every reference makes evident the Legislature's intended meaning.

**9.** *E.g.,* Ala.Code § 18–1A–232; Alaska R. Civ. P. 72(i), (k); Cal.Civ.Proc.Code § 1268.610; 26 Pa. Cons.Stat . § 308.

**10.** Model Eminent Domain Code § 1303(b) (1984).

reduction."[11] The model code was adopted by the National Conference of Commissioners on Uniform State Laws in 1984, but Texas lawmakers, while twice substantively amending the fee-shifting provisions since then, have declined to authorize fee shifting in partial-dismissal cases.[12]

Chapter 21 of the Property Code is the Legislature's comprehensive rulebook governing the taking of private property for public use. And while I understand the Court's concerns about condemnors' artful dodging of otherwise-recoverable fees, the statute focuses on actions, not motives; it says what it says, not what the Court says it says. Landowners recover when the court grants a condemnor's motion dismissing the entire proceeding or determines the condemnor lacked the right to acquire the property,[13] not when the condemnor amends to take less property. The Legislature has defined the specific circumstances under which a landowner may recover fees and expenses, and those circumstances—"a matter of legislative grace rather than constitutional command"[14]—are simply absent in this case. Here, the University amended its petition to shrink the project; it did not dismiss its petition to abandon the project.

I understand that Part II(B)(2) of the Court's opinion aims to work an eminently fair result, but as it upends the balance lawmakers struck in the controlling statute, I respectfully dissent.

---

11. *Id.*

12. Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.46, 1997 Tex. Gen. Laws 4427, 4447 (codified at TEX. PROP.CODE § 21.0195); Act of May 30, 1987, 70th Leg., R.S., ch. 483, § 1, 1987 Tex. Gen. Laws 2091, 2091 (amending TEX. PROP.CODE § 21.019).

13. TEX. PROP.CODE §§ 21.019, .044.

14. *United States v. Bodcaw Co.*, 440 U.S. 202, 204, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979).