**AFFIRM IN PART; REVERSE AND RENDER IN PART, and Opinion Filed June 3, 2022**



**In the**

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00796-CV**

**L.D. MCLOUD TRANSPORTATION, LLC, Appellant**
**V.**
**1ST CLASS FUELS, LLC F/K/A WOODS TRANSPORTATION, LLC AND CHRISTOPHER WOODS, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-14358**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Carlyle

L.D. McCloud Transportation, LLC (LDM) appeals a summary judgment granted in favor of 1st Class Fuels, LLC and Christopher Woods (collectively, the Woods parties). We affirm in part, and reverse and render in part, in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

LDM operates a fleet of trucks that haul fuel for Trimac Transportation Group, Inc. Mr. Woods began hauling fuel for Trimac as an independent contractor in 2014, working out of Trimac's Grand Prairie service yard, which was managed by LDM's owner. In April 2017, LDM contracted with Mr. Woods through his limited-liability

entity, Woods Transportation, LLC, to begin hauling fuel for Trimac indirectly as one of LDM's subcontractors. Woods signed two independent-contractor agreements with LDM, one in April 2017 and another in January 2018, purportedly on behalf of Woods Transportation. Each agreement had a one-year term that could be terminated at any time by either party upon thirty days' notice. In addition, each agreement contained a non-solicitation and non-competition clause that extended an additional year beyond the contract's termination.

A few months before signing the second agreement, Mr. Woods changed his entity's name from Woods Transportation to 1st Class Fuels without telling LDM. He later admitted that, although it was "basically an oversight," he did not want LDM to know about the name change.[1]

After 1st Class Fuels obtained its state registration to act as a motor fuel transporter in May 2018, Mr. Woods notified LDM he was terminating the parties' independent-contractor agreement, and 1st Class Fuels began hauling directly for customers Mr. Woods had serviced during his tenure with both Trimac and LDM.

Soon after, LDM filed the underlying suit against the Woods parties, seeking damages and injunctive relief for breach of the independent-contractor agreements' restrictive covenants. After the trial court declined to issue a temporary injunction,

---

[1] When pressed, Mr. Woods also admitted that he intended to deceive LDM by failing to disclose the name change. These admissions are not part of the summary judgment record, however, because LDM failed to attach the relevant deposition excerpt as part of its summary judgment evidence.

LDM filed several amended petitions, among other things, adding a fraudulent inducement claim. The Woods parties filed a series of summary judgment motions.

Relevant to this appeal, the Woods parties filed a traditional motion for summary judgment on LDM's breach of contract and fraudulent inducement claims, arguing that: (1) both claims failed because they relied on an illegal agreement to transport fuel without a license; and (2) LDM's breach of contract claim failed because the agreements' restrictive covenants are unenforceable restraints on trade. In addition, the Woods parties filed a no-evidence motion on LDM's fraudulent inducement claim, arguing that there is no evidence of any actionable misrepresentation, justifiable reliance, or damages.

Before responding, LDM amended its petition to drop its breach of contract claim. In its summary judgment response, LDM argued that, because it no longer sought damages for breach of contract, the Woods parties' arguments about whether the agreements were unenforceable restraints on trade were moot. LDM also argued that the agreements were not illegal and that it had offered sufficient evidence to support its fraudulent inducement claim. After a hearing, the trial court granted both summary judgment motions without specifying the grounds, and entered a take-nothing judgment in favor of the Woods parties.

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). And where, as here, the trial court's order does not specify the

grounds on which summary judgment was granted, we will affirm if any theory presented to the trial court and preserved for our review is meritorious. *Provident Life & Accident Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When a party moves for summary judgment on both traditional and no-evidence grounds, we generally address the no-evidence motion first. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). If the challenge to the no-evidence motion fails, we need not consider the traditional motion. *Id.*

To defeat a no-evidence motion, the non-movant must produce evidence sufficient to raise a genuine issue of material fact as to each of the challenged elements. *Id.* This requires that the non-movant specifically identify the evidence it seeks to have the trial court consider and explain why that evidence demonstrates the existence of a fact issue. *Great Hans, LLC v. Liberty Life Serv. Corp.*, No. 05-20-00113-CV, 2021 WL 5822841, at *2 (Tex. App.—Dallas Dec. 8, 2021, no pet. h.) (mem. op.). The trial court is not required to search through the record and determine on its own whether a fact issue exists without specific guidance from the non-movant. *Id.*

A genuine fact issue exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Thus, a fact issue does not exist if the evidence is "so weak as to do no more than create a mere

–4–

surmise or suspicion" of its existence. *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

To prove its fraudulent inducement claim, LDM would need to show the Woods parties induced it to enter into a valid contract by: (1) making a material misrepresentation; (2) with knowledge of its falsity or without knowledge of its truth; (3) with the intent that LDM should act upon it; (4) on which LDM relied; and (5) that caused LDM injury. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). In their no-evidence motion, the Woods parties asserted there was no evidence of a material misrepresentation, reliance, or damages.

With respect to the first challenged element, LDM responded that the Woods parties had misrepresented the name of the entity that entered into the second independent-contractor agreement. For support, LDM cited evidence establishing that, at the time Mr. Woods purported to sign the second agreement on behalf of Woods Transportation, he had already changed the entity's name to 1st Class Fuels without telling LDM.[2]

With respect to the second challenged element, LDM responded that its "reliance on Defendant[s'] representation of their very identity was clearly

---

[2] LDM asserts a different argument on appeal—that the evidence it cited shows the Woods parties misrepresented their present intent to be bound by the second independent-contractor agreement. *See Anderson*, 550 S.W.3d at 614 ("Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform."). But LDM did not raise that issue in their response to the no-evidence motion, and they cannot do so for the first time on appeal. *See* TEX. R. CIV. P. 166a(c). The trial court was not required to review the evidence cited by LDM and determine whether a fact issue existed as to a misrepresentation LDM failed to identify.

justified," noting that the purpose of the second agreement was to allow the Woods parties to haul fuel using an additional truck, and citing this testimony from LDM's owner:

> Had I known that Defendants were planning to leave my company and go out on their own I would not have entered into the second agreement on January 5, 2018. By doing so I allowed Defendants to pull more loads, earn greater revenue, and gain greater access to my clients and my business information. In fact, I would have taken actions to hire other drive[r]s and secure additional trucks as necessary. I would also have reduced and ultimately eliminated the work I was providing to Defendants.

With respect to the damages element, LDM cited Mr. Woods's deposition testimony, in which he admitted both that 1st Class Fuels increased its gross revenue by hauling loads directly for customers and that the revenue it received after leaving LDM came from "loads that [he] would have hauled through LDM Transportation, LLC had [he] not gone out on [his] own." LDM thus argued the Woods parties received revenue, pointing to invoices documented in a voluminous exhibit to Mr. Woods's deposition, that LDM "would have received but for the fraud of Defendants' malfeasance."

This evidence does not raise a fact issue on LDM's fraudulent inducement claim. As an initial matter, LDM failed to link its purported reliance to the only misrepresentation it identified—Mr. Woods's failure to reveal he had changed the name of his entity from Woods Transportation to 1st Class Fuels. LDM's owner testified that, had he known the Woods parties were planning to "leave [his] company

–6–

and go out on their own," he would not have entered into the second independent-contractor agreement, and he would have taken certain measures to limit the Woods parties' ability to compete. Yet having knowledge of the name change is not the same as having knowledge of the Woods parties' plans to go out on their own. LDM's response did not cite any evidence, nor did it provide any explanation, connecting those dots. Without more, LDM's response was insufficient to raise a fact issue on reliance.

LDM's response also asserted that the revenue the Woods parties received after leaving LDM, paired with Mr. Woods's admission that they earned that revenue by hauling fuel they otherwise would have hauled through LDM, is alone sufficient evidence of its damages. But LDM offered no evidence tying the revenue the Woods parties received to any revenue LDM lost because of actions it purportedly took in reliance on the Woods parties' misrepresented identity.

LDM cannot base its damages on revenue it allegedly would have received if the Woods parties had continued hauling fuel for LDM, because the Woods parties had no obligation to continue hauling fuel for LDM—especially if, as LDM's owner testified, LDM would not have entered into the second independent-contractor agreement or continued to provide business to the Woods parties had it known about the alleged misrepresentation.

Likewise, LDM failed to provide any evidence linking the revenue the Woods parties ultimately received to testimony from LDM's owner that he allowed the Woods parties to "gain greater access to [his] clients and [his] business information." Nothing in LDM's response suggested that the Woods parties obtained their customers by using increased access or business information received as a result of LDM entering into the second agreement.

Further, LDM failed to point to any evidence suggesting that it would have instead received the revenue the Woods parties ultimately received if LDM would "have taken actions to hire other drive[r]s and secure additional trucks as necessary." At most, this evidence raises a mere suspicion that, had LDM learned about the Woods parties' plans to compete before entering into the second agreement, LDM would have both received and been capable of fulfilling any business eventually diverted to 1st Class Fuels.

LDM argues for the first time on appeal that it is entitled to the benefit of its bargain as a measure of its damages for fraudulent inducement. *See Anderson*, 550 S.W.3d at 614. LDM's response, however, pointed to no evidence of any revenue it would have received had the second independent-contractor agreement been fulfilled as promised. LDM had no obligation to provide any business to the Woods parties under that agreement, and the Woods parties had no obligation to continue hauling fuel for LDM after terminating the agreement. Thus, LDM cannot prove any

amount to which it was contractually entitled as a benefit of its bargain under the agreement.

To the extent LDM asserts that it is entitled to seek damages for breach of the second agreements' restrictive covenants as benefit-of-the-bargain damages for fraudulent inducement, it did not raise that issue in response to the no-evidence motion and cannot rely on it on appeal. *See* TEX. R. CIV. P. 166a(c). Moreover, even if we assume that it could properly assert these damages under a benefit-of-the-bargain theory, LDM did not explain how the evidence it cited raised a fact issue as to its damages under that theory. Indeed, the only evidence LDM cited was the revenue 1st Class Fuels received after leaving LDM, paired with Mr. Woods' admission that LDM would have received that revenue if Mr. Woods had continued hauling fuel for LDM. But that cluster of facts does not, by itself, provide sufficient evidence either of a violation of the restrictive covenants or of LDM's damages for any breach. It is also noteworthy that LDM specifically told the trial court that it need not decide whether the restrictive covenants were unenforceable because it was not seeking damages for their breach.

Under these circumstances, the trial court did not err by granting the Woods parties' no-evidence motion on LDM's fraudulent inducement claim, and we need not address whether the trial court erred by granting the traditional motion on that claim. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220.

That said, we must address LDM's argument that the trial court erred to the extent it granted the Woods parties' traditional motion on its breach of contract claim. "In civil causes generally, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 632 (Tex. 2008). When a nonsuit is filed, the merits of any nonsuited claims become moot. *See Central Refining, L.L.C. v. Calderon*, No. 05-17-01372-CV, 2018 WL 5784529, at *1 (Tex. App.—Dallas Nov. 5, 2018, no pet.) (mem. op.). Here, LDM filed an amended petition in advance of the summary judgment hearing that removed its claim for breach of contract. At that point, the claim was effectively nonsuited, and the merits of that claim became moot. *See FKM P'ship, Ltd.*, 255 S.W.3d at 632; *Central Refining, L.L.C.*, 2018 WL 5784529, at *1.

The Woods parties contend we should affirm traditional summary judgment on that claim, arguing that "whether the restrictive covenants are unenforceable restraints of trade is not moot because [LDM's] live pleading continues to expressly rely on the violation of these covenants for its fraud cause of action." Although we agree that the issue of whether the restrictive covenants are unenforceable was not moot as to the fraudulent inducement claim, the Woods parties did not assert that as a basis for obtaining summary judgment on that claim. And, regardless, that issue has no bearing on the propriety of granting summary judgment on the breach of

–10–

contract claim. Once LDM filed its amended petition effectively nonsuiting that claim, the trial court could not grant summary judgment on it, and the trial court erred to the extent it did. *See id.*

Finally, we reject LDM's argument that the trial court reversibly erred by not granting its motion for a continuance. Nothing in the record suggests LDM preserved this issue for our review by bringing its motion to the trial court's attention and either obtaining a ruling or objecting to the trial court's refusal to rule. *See Hartsfield v. Bank of Am.*, No. 05-17-01354-CV, 2019 WL 3212149, at *2 (Tex. App.—Dallas July 9, 2019, no pet.) (mem. op.).

We reverse the trial court to the extent it granted the Woods parties' motion for traditional summary judgment on LDM's breach of contract claim, and we render judgment dismissing that claim without prejudice. In all other respects, we affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
200796f.p05                                         JUSTICE

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

L.D. MCCLOUD
TRANSPORTATION, LLC,
Appellant

No. 05-20-00796-CV      V.

1ST CLASS FUELS, LLC F/K/A
WOODS TRANSPORTATION,
LLC AND CHRISTOPHER
WOODS, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-14358.
Opinion delivered by Justice Carlyle.
Justices Reichek and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** to the extent the trial court granted traditional summary judgment on L.D. McCloud Transportation, LLC's breach of contract claim, and judgment is rendered dismissing that claim without prejudice. In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 3rd day of June, 2022.