William K. MANNING, Individually and as Independent Executor of the Estate of Edna C. Manning and The Estate of Jack C. Manning, Appellant/Cross–Appellee,

v.

ENBRIDGE PIPELINES (EAST TEXAS) L.P., Flowers Davis, P.L.L.C., and Thomas H. Buchanan, Appellees/Cross–Appellants.

No. 09–10–00205–CV.

Court of Appeals of Texas,
Beaumont.

Submitted May 12, 2011.

Decided July 14, 2011.

Robert Keith Wade, Law Office of Robert Keith Wade, Beaumont, for appellant/cross-appellee.

Melanie S. Reyes, Flowers Davis, P.L.L.C., Tyler, Jim Parsons, The Law Office of Jim Parsons, Palestine, for appellees/cross-appellants.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

This appeal concerns a condemnation action in which the parties agreed on the amount of compensation, $32,005, for a pipeline easement, but tried other contested issues. The landowner, the pipeline company, and the pipeline company's counsel appealed. We affirm the trial court's judgment.

### ENBRIDGE PIPELINES v. MANNING

Five years ago, Enbridge Pipelines (East Texas), L.P. began an action to condemn a 50–foot–wide pipeline easement across property held by William K. Manning. Enbridge's original petition named Manning without mentioning any representative capacity. The special commissioners awarded Manning $9,222.00. Enbridge deposited that sum and acquired a writ of possession that encompassed the entire Manning property of approximately 183 acres. Acting in his capacity as Executor of the Estates of Jack C. Manning and Edna C. Manning, Manning filed a plea to the jurisdiction. He alleged that he had been incorrectly named as a defendant in his individual capacity instead of in his capacity as the Independent Executor of the Manning estates. Manning objected to the special commissioners' award and challenged Enbridge's authority to take private property. Manning filed a counterclaim alleging breach of contract, fraud, and negligence. He moved to dissolve Enbridge's writ of possession.

Enbridge claimed that Manning was the proper party to the condemnation. According to Enbridge, Jack C. Manning acquired the property by deed and left his entire estate to his wife, Edna C. Manning, at his death. Enbridge alleged that Edna died leaving a nuncupative will, and that upon Edna's death her real property im-

mediately passed to William K. Manning under the laws of descent and distribution. Enbridge asked the trial court to deny Manning's motion to dissolve the writ of possession, moved for summary judgment, and filed a notice of lis pendens. The trial court denied Manning's plea to the jurisdiction.

Manning sought to depose Enbridge's counsel of record, Thomas A. Buchanan. Buchanan sought a protective order. On order of the trial court, the trial court clerk issued an amended writ of possession. Manning continued to seek the depositions of Buchanan and other persons with Buchanan's firm, Flowers Davis, P.L.L.C. Enbridge sought to disqualify Manning's counsel on the ground that Manning's counsel was a fact witness on issues other than attorney fees.

## MANNING v. BUCHANAN

Manning, acting in his capacity as executor of the Manning estates, and John R. Cook, acting in his capacity as trustee of the Edna C. Manning Family Trust, sued Buchanan and Flowers Davis, for abuse of process and tortious interference with an oil and gas lease on the Manning property. Buchanan and Flowers Davis filed a motion for summary judgment based on an assertion of qualified immunity, and filed a motion for protective order. The trial court signed an agreed protective order permitting the deposition. Manning deposed Buchanan, and then filed an amended petition to add Enbridge as a defendant. Manning and Cook sought to nonsuit the claims against Buchanan and Flowers Davis. The trial court signed an order of non-suit. Buchanan and Flowers Davis filed a motion for sanctions against Manning and Cook and their counsel of record. After a hearing, the trial court denied the motion for sanctions.

## CONSOLIDATION AND TRIAL

*Enbridge v. Manning* and *Manning v. Buchanan* were consolidated. Enbridge filed a plea to the jurisdiction and motion to dismiss on grounds that all of the claims filed by Manning solely in a representative capacity had occurred while Manning was record title owner in his individual capacity. Enbridge alleged that Manning, in his representative capacity, lacked standing to pursue a claim actually held in an individual capacity. The trial court denied the plea to the jurisdiction after a pre-trial hearing in which no testimony was received.

Manning filed a plea to the jurisdiction in which Manning alleged that Enbridge's certificate of its right to do business in Texas had been forfeited from September 29, 2006, through October 25, 2006. Manning alleged that Enbridge lacked the capacity to receive the award and writ of possession, and that consequently Enbridge lacked the capacity to condemn Manning's property. The trial court overruled Manning's plea to the jurisdiction.

Trial before a jury began but was concluded by stipulations, not by jury verdict. A partial record of the trial testimony has been filed. *See* Tex.R.App. P. 34.6(c). The appellate record includes testimony from an expert regarding the laws of descent and distribution, testimony from a representative of a company that decided not to obtain an oil and gas lease on the Manning property after the company discovered the property was the subject of a condemnation suit, and testimony from two of Manning's attorneys.

The trial court entered a judgment that established the pipeline easement and awarded compensation over the amount initially deposited by Enbridge. On the contested issues, the trial court directed a verdict in favor of Enbridge on Manning's claims for abuse of process, breach of con-

tract, tortious interference with contract, fraud, nuisance, and negligence. The trial court resolved the declaratory judgment action on Manning's suit to quiet title, to remove a cloud on title, and attorney fees associated with those claims. The trial court rendered a declaratory judgment declaring and quieting title in Manning, individually, and awarding Manning's counsel attorney fees in the amount of $10,000. The trial court found that the usual and customary rate for attorneys in Polk County is $200 per hour, that Manning's lead counsel recorded 43.25 hours from the date of the filing of the petition through the date that the amended writ of possession issued, and that Manning's lead counsel was entitled to an award of $10,000 as reasonable and necessary attorney fees.

## THE APPEALS

In nine issues that have been presented collectively, Manning, acting in his capacity as executor of the Manning estates and in his capacity as co-trustee of the Edna C. Manning Family Trust,[1] asserts challenges to the judgment that are based upon Enbridge's right to conduct business, defects in service on Manning, alleged abuses of process in the course of the condemnation proceedings, and the award of attorney fees to Manning's counsel of record. In one issue, Enbridge, Buchanan, and Flowers Davis contend the trial court abused its discretion by denying their motion for

sanctions and they ask this Court to reverse the sanctions order and render judgment on their motion for sanctions. They argue that Manning's counsel brought groundless claims that were barred as a matter of law and that the record shows that counsel's purpose was to gain an unfair advantage and to disrupt the attorney-client relationship between Enbridge and Buchanan.

## RIGHT TO TRANSACT BUSINESS

■ In issue one, Manning contends that the trial court improperly applied Section 153.309 of the Business Organization Code. He argues that a proper application of the statute requires a dismissal of the condemnation action. Manning alleged that Enbridge's certificate of its right to do business in Texas had been forfeited from September 29, 2006, through October 25, 2006. Although Enbridge filed the condemnation petition before September 29, 2006, the special commissioners' award and the original writ of possession issued during the period of time when Enbridge was, according to a letter from the Open Records Division of the Texas Comptroller of Public Accounts, "in delinquent status" for "non-filing of [a] periodic report[.]"[2] Manning alleged that Enbridge lacked the capacity to receive the award and writ of possession, and that consequently Enbridge lacked the capacity to condemn Manning's property.[3]

---

1. A co-trustee, John R. Cook, appeared in the trial court but did not file a notice of appeal.

2. Certified copies of two letters from the Secretary of State were filed with the trial court on February 22, 2010. The same documents appear in the exhibit volume of the reporter's record, but the reporter's record does not show that the documents were offered or admitted into evidence during the pre-trial hearing or the trial. After the trial court denied the plea to the jurisdiction at the February 22, 2010 pre-trial hearing, counsel for Manning

brought the documents to the attention of the trial court "to preserve the record." We presume the trial court was aware of the contents of the documents.

3. A change in Enbridge's status that occurred after it acquired an interest in the subject property would not have affected the interest acquired. See Tex. Prop.Code Ann. § 21.045 (West 2000) ("An interest acquired by a condemnor is not lost by the forfeiture or expiration of the condemnor's charter and is subject

■ Limited partnerships may file periodic reports with the Secretary of State. *See* Tex. Bus. Orgs.Code Ann. § 153.301 (West Supp. 2010). A limited partnership that fails to file a report forfeits the right to transact business in Texas. *See id.* § 153.307(a) (West Supp. 2010). If its right to transact business in the state is forfeited, a limited partnership "may not maintain an action, suit, or proceeding in a court of this state[.]" *Id.* § 153.309(a)(1) (West Supp. 2010).[4] The forfeiture of the right to transact business does not "prevent the limited partnership from defending an action, suit, or proceeding in a court of this state." *Id.* § 153.309(b)(2). A limited partnership that forfeits its right to transact business in Texas "may be relieved from the forfeiture" by filing the required report and paying the required fee. *Id.* § 153.310(a) (West Supp. 2010). In such case, the Secretary of State revives the right to transact business and cancels the note regarding forfeiture. *Id.* § 153.310(b)(1),(2). If the limited partnership fails to revive its right to transact business in Texas, the Secretary of State may terminate the partnership's certificate of formation. *Id.* § 153.311(a) (West Supp. 2010).[5]

■ An analogous group of statutes applies to corporations. A corporation forfeits its corporate privileges if it fails to timely pay franchise tax. *See* Tex. Tax Code Ann. § 171.251 (West 2008). The corporation's right to transact business may be lost as well. *See id.* § 171.2515(a) (West 2008). If a corporation's rights are forfeited, it cannot sue or defend in a Texas court. *See id.* § 171.252(1) (West 2008). Affirmative relief cannot be granted until its corporate privileges are revived. *See id.* § 171.253 (West 2008). After reinstatement, the revived rights relate back to the point of the delinquency. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 839 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A forfeiture does not deprive the court of jurisdiction. *Hardwick v. Austin Gallery of Oriental Rugs, Inc.*, 779 S.W.2d 438, 441 (Tex.App.-Austin 1989, writ denied) (op. on reh'g), *superseded on other grounds by statute as stated in Bair Chase Prop. Co., L.L.C. v. S & K Dev. Co., Inc.*, 260 S.W.3d 133 (Tex.App.-Austin 2008, pet. denied).

■ Manning argues that Enbridge could not revive its capacity to receive the commissioners' award after Manning converted the administrative proceeding to a judicial one by filing his objection. Under the analogous statute that applies to corporations, "[o]nce the right to sue or defend is revived, the corporation may sue or defend all causes of action, regardless of whether such causes arose before or during the period of forfeiture." *G. Richard Goins Constr. Co., Inc. v. S.B. McLaughlin Assocs., Inc.*, 930 S.W.2d 124, 128 (Tex. App.-Tyler 1996, writ denied). Revival reinstates all rights "as if the disability had never existed." *Id.* In this case, Manning conceded that Enbridge's right to transact business in Texas was restored on October 25, 2006. Because its right to transact business was restored, Enbridge's temporary lack of capacity is moot. *See Flame-*

---

to an extension of the charter or the grant of a new charter without a new condemnation.").

4. Because the 2009 amendment to Section 153.309 changed a subsection that is not at issue in this case, we cite to the current version of the statute.

5. Because the 2009 amendment to Section 153.311 has no material effect here, we cite to the current version of the statute.

*out Design,* 994 S.W.2d at 839. We overrule issue one.

### REPRESENTATIVE CAPACITY

■ In issue three, Manning contends the trial court erred in applying Section 21.016(d)(2) of the Texas Property Code, which requires notice of the hearing to be served on the legal representative if the property being condemned belongs to a decedent's estate. *See* Tex. Prop.Code Ann. § 21.016(d)(2) (West 2004). Enbridge contends that Manning took title to the property outright upon Edna C. Manning's death, and argues that the probate of Edna's nuncupative will did not affect the transfer of the property under the laws of descent and distribution.[6] In issue four, Manning contends the trial court improperly applied sections 37, 233, and 238 of the Probate Code, which Manning argues permits the representative of an estate to hold the property during the administration of the estate. *See* Tex. Prob.Code Ann. §§ 37, 233, 238 (West 2003 & Supp. 2010).

Section 37 of the Probate Code provides that title vests immediately, subject to the debts of the decedent. *See id.* § 37. Section 233 of the Probate Court provides for collection of claims and debts and recovery of possession of all property of an estate. *See id.* § 233(a). The record includes the 1993 inventory for the Estate of Jack C. Manning, which lists claims in the amount of $147,940.18. A 2002 inventory for the Estate of Edna C. Manning states there are no claims for her estate. Section 238 of the Probate Code provides that the probate court may order the personal representative of an estate to operate a business that is part of the deceased's estate. *See id.* § 238(b). Manning neither argues

that the probate court entered such an order nor directs this Court's attention to where the order may be found in the record.

Section 21.016 of the Property Code requires the special commissioners to issue notice of the time and place of the hearing as follows:

(1) by delivering a copy of the notice to the party or to the party's agent or attorney;

(2) if the property being condemned belongs to a deceased's estate or to a minor or other legally disabled person and the person or estate has a legal representative, by delivering a copy of the notice to the legal representative; or

(3) if the property being condemned belongs to a nonresident of this state and there has been no personal service on the owner, if the identity or the residence of the property owner is unknown, or if the property owner avoids service of notice by hiding, by publication in the same manner as service of citation by publication in other civil cases in the district courts or county courts at law.

Tex. Prop.Code Ann. § 21.016(d). The notice in the record is to "William K. Manning." The record also shows delivery of a copy to Manning's counsel.

Enbridge filed the condemnation proceeding against Manning in his individual capacity. Manning filed a plea to the jurisdiction in his capacity as Independent Executor of the Manning estates. In his plea, Manning alleged that the estates were pending and that he had been incorrectly named as a defendant. Manning's objection to the commissioners' award was made subject to his plea to the jurisdiction. Acting as a representative of the estates

---

**6.** Although Manning was not Edna's sole heir at law, her remaining heirs quitclaimed their interests to Manning in 2003.

and a trust, Manning sued Enbridge in a separate action. That action was consolidated with the condemnation proceeding. Accordingly, Manning appeared before the trial court in both his individual and his representative capacity. Enbridge argues that any procedural defects that existed during the administrative phase of the condemnation proceeding could be and were cured during the judicial phase of the proceeding. *See Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172, 184 (Tex.2004) (Noncompliance with Section 21.012 of the Texas Property Code which specifies the prerequisites for a condemnation petition may be cured by abatement.).

The parties reached a partial agreement at the conclusion of the trial. *See* Tex.R. Civ. P. 11. Manning agreed to accept $32,005 for the condemned pipeline easement. The parties expressly agreed that the judgment would affirm that title as of September 18, 2006 was in Manning. The parties' agreement left unresolved only Manning's request for declaratory relief on his suit to quiet title and for attorney fees. At the conclusion of trial, the parties agreed to draft a single judgment that would cover all claims in the consolidated cases. Manning's counsel asked, "We're agreeing to the form of the judgment. This is not an agreed settlement, right?" Enbridge's counsel stated, "We agree to the form of the judgment."

■ The parties did not agree on the entire judgment, particularly those matters on which the trial court had granted a directed verdict, but the parties did stipulate and agree to the issues of just compensation and damages for the condemnation. "The contents of a stipulation constitute judicial admissions, are conclusive on the issues addressed, and estop the parties from claiming to the contrary." *McCuen v. Huey,* 255 S.W.3d 716, 726 (Tex.App.-Waco 2008, no pet.).

The parties agreed that title was in Manning when the condemnation proceeding commenced. Manning has not argued that the trial court erred in taking the issue from the jury, nor has he directly challenged the trial court's declaration that "[f]or purposes of this lawsuit, title to the subject property is vested in William K. Manning, Individually, as of August 30, 2006[.]" The unchallenged finding is binding. *Ward v. Ladner,* 322 S.W.3d 692, 701 (Tex.App.-Tyler 2010, pet. denied). The special commissioners' failure to refer to Manning's representative capacity on the notice of hearing did not deprive the trial court of jurisdiction. We overrule issues three and four.

## ATTORNEY FEES

Manning's six other issues, the core of the dispute, concern attorney fees. The trial court awarded Manning's counsel $10,000 as reasonable and necessary attorney fees for pursuing the declaratory judgment action to quiet Manning's title. The trial court found that the usual and customary hourly rate for attorneys in Polk County is $200 per hour in litigation of this nature and that lead counsel recorded 43.25 hours from the date of the filing of the petition through the date of the amendment of the writ of possession.

■ Manning argues that several statutes allow the landowner to recover attorney fees in the situation presented. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 2008) (allowing attorney fees for the prevailing party in a declaratory judgment action); Tex. Prop.Code Ann. § 21.019 (West 2004) (when a court grants a motion to dismiss a condemnation proceeding it may make an allowance to the property owner for reasonable and necessary attorney fees incurred by the property owner to the date of the hearing or judgment); Tex. Prop.Code Ann. §§ 21.044(a)–21.045 (West

2000) (providing that the interest acquired by the condemnor does not include the fee simple interest unless expressly provided by law, and allowing recovery of damages if the trial court determines the condemnor who has taken possession of property pending litigation did not have the right to condemn the property). Citing *FKM Partnership*, Manning argues that the correction of the writ of possession functioned as an abandonment of the original condemnation claim, for which Manning is entitled to recover all of the attorney fees incurred to the date of judgment. *See FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 636 (Tex.2008).

In *FKM Partnership*, the Supreme Court held "that an amended condemnation petition dismisses the proceedings within the meaning of section 21.019(b) even if the condemnor does not completely dismiss or abandon the proceedings, but continues them in such manner that the amendment functionally abandons the original condemnation claim and asserts a different claim." Accordingly, *FKM Partnership* incorporated the "mechanism of dismissal by amended pleadings" into section 21.019, which allows for the recovery of attorney fees where the condemnor files a motion to dismiss the condemnation proceeding. *Id.* at 637. A review of Enbridge's pleadings shows that Enbridge never petitioned to acquire the entire Manning property. Both Enbridge's original statement and petition for condemnation and its amended petition sought a total of 3.85 acres for a 50–foot–wide permanent easement and right-of-way with temporary workspace. The writ of possession was not a pleading and the correction of the property description on the writ of possession was not an abandonment of Enbridge's proceeding to obtain a 50–foot–wide pipeline easement. We do not believe the holding in *FKM Partnership*

means a correction of the erroneous description in the writ of possession amounts to a dismissal of the condemnation proceeding under the circumstances in this case. *Id.*

■ Manning also contends that the trial court failed to follow *FKM Partnership* with regard to assessing attorney fees as damages for obtaining a writ of possession on property the condemnor did not have a right to condemn. *See id.* at 637–38. In *FKM Partnership*, the trial court expressly granted temporary possession damages pursuant to section 21.044 of the Property Code, but the Supreme Court held that the damages were not recoverable because the record showed only that the condemnor took a smaller tract, and the record did not show that the condemnor could not have taken the larger tract that was impliedly dismissed from the proceeding. *Id.* In these trial court proceedings, Manning did not move for temporary possession damages pursuant to Section 21.044. The trial court did not err in failing to award damages pursuant to section 21.044 of the Property Code in the absence of a request by Manning for damages based upon that statute.

■ Manning also contends that the trial court erred in applying the statutory authorization for attorney fees in declaratory judgment actions. Enbridge contends attorney fees are not recoverable under the Declaratory Judgment Act because Manning's claims are in the nature of trespass to try title. Issues relating to easements may be determined through a declaratory judgment action. *Roberson v. City of Austin*, 157 S.W.3d 130, 137 (Tex. App.-Austin 2005, pet. denied). The parties agreed that fee title is in Manning and the trial court determined the rights of the parties under the writ of possession. Under these circumstances, the declaratory

judgment is not incidental to a trespass to try title suit.

■ The trial court awarded attorney fees in the amount of $10,000. Apparently, Manning's complaint regarding the award of attorney fees under the Declaratory Judgment Act concerns the amount of the award. One attorney testified that he has practiced in Polk County for thirty-eight years, that Manning incurred a $9,000 flat fee for his representation of Manning, and that the fee was reasonable and customary. He testified that he followed the *Arthur Andersen* guidelines, but he did not provide any testimony about how those guidelines applied in this case. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). On cross-examination, he testified that attorneys appointed by the court in civil cases in Polk County receive approximately $50 per hour.

Manning's other attorney testified that he has practiced law since 1981 and he has years of experience dealing with pipeline companies. Manning's counsel calculated that from May 9, 2006 through February 23, 2010, he spent 464.6 hours working on Manning's case. He separately calculated the sum of $11,343.75 for the fees incurred from May 9, 2006 through October 12, 2006, during which he presented a motion to dissolve the writ of possession to opposing counsel. On cross-examination, Manning's counsel testified that his fee agreement with Manning provided for a contingent fee of one-third of the amount awarded for the property "unless there are causes of action that provide for recovery of statutory fees." According to Manning's counsel, the contract provided for either a one-third contingent fee or for statutory fees, but not both. His billing rate is $375 per hour. Opposing counsel noted that counsel's billing records included at least one single-day billing for twelve and one-half hours of work on Manning's case. Counsel did not segregate the time he spent pursuing claims against Buchanan and Flowers Davis. At the conclusion of his testimony, Enbridge objected to the failure to segregate attorney fees between the claims for which attorney fees are recoverable and unrecoverable. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). On appeal, Manning contends that his attorneys' testimony was uncontroverted and that the reasonableness of a $375 hourly fee was further supported by the testimony of Enbridge's expert, who testified that Enbridge paid him $450 per hour for the time he spent in deposition.

Trial courts have broad discretion in awarding attorney fees in a declaratory judgment action. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 952, 173 L.Ed.2d 116 (2009). The evidence of hourly rates for attorneys ranged from $50 per hour to $450 per hour. The attorney who testified that he practiced in the county of suit did not state what a reasonable hourly fee would be, and he failed to establish that the flat fee he charged was reasonable in light of the *Arthur Andersen* factors. *See Arthur Andersen*, 945 S.W.2d at 818. The attorney who testified that he expended 464.6 hours working on the case failed to segregate his fees between the declaratory judgment action and the claims for which Manning did not recover attorney fees from Enbridge. *See Chapa*, 212 S.W.3d at 313. Even if the reasonableness of the fee had been established, the trial court could have determined that it would not be equitable to shift all of the fees incurred by Manning to Enbridge. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equi-

table and just."). We hold the trial court acted within its discretion regarding the award of attorney fees. We overrule issues two, five, six, seven, eight, and nine.

### SANCTIONS

Enbridge, Buchanan, and Flowers Davis contend that the trial court abused its discretion in refusing to assess sanctions against Manning's attorney for filing a frivolous lawsuit. They argue that Manning's counsel brought groundless claims in bad faith for the purpose of harassment and that he failed to justify his actions. Buchanan and Flowers Davis filed a motion for sanctions after the trial court signed the order of non-suit. They alleged that Manning's suit in *Manning v. Buchanan* was based entirely upon Buchanan's representation of Enbridge in *Enbridge v. Manning*, for which Buchanan and Flowers Davis had qualified immunity. They moved for sanctions on the ground that in an attempt to inflate Manning's condemnation-related damages, counsel for Manning had filed a groundless pleading for the purpose of harassment. *See* Tex.R. Civ. P. 13; Tex. Civ. Prac. & Rem.Code Ann. §§ 9.012(a), 10.002 (West 2002). Counsel for Buchanan and Flowers Davis testified that he charged $250 per hour for his services, that he had billed and been paid $18,910.32 by Buchanan, and that Buchanan will incur an estimated additional $3,500 in fees for pursuing the motion for sanctions. The trial court denied the motion.

Manning contends that the motion for sanctions was not timely filed. A non-suited party may file a motion for sanctions while the trial court retains its plenary power over the case. *See Scott & White Mem'l Hosp. v. Schexnider,* 940 S.W.2d 594, 596 (Tex.1996). Manning added Enbridge as a defendant in *Manning v. Buchanan* prior to non-suiting Buchanan

and Flowers Davis, so the order of non-suit was not a final order and the trial court retained its plenary power when Buchanan and Flowers Davis moved for sanctions five days later.

A party cannot be ordered to pay an opponent's incurred expenses pursuant to section 9.012 of the Civil Practice and Remedies Code if the offending party withdraws or amends the pleading. *See* Tex. Civ. Prac. & Rem.Code Ann. § 9.012(d). Section 10.004 of the Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure each provide that a trial court may impose a sanction on a person who has signed a frivolous pleading, but the decision to impose sanctions is discretionary. *See* Tex. Civ. Prac. & Rem.Code Ann. § 10.004(a) (West 2002); Tex.R. Civ. P. 13. The parties have not cited a case in which an appellate court held that a trial court abused its discretion by declining to impose a punishment for conduct that is sanctionable under section 10.004(a) or Rule 13. In those cases where the offended party appealed the trial court's order denying a motion to impose sanctions, the appellate courts have upheld the trial court, because of the trial court's discretion. *See In re Commitment of Nicholas,* No. 09–08–00452–CV, 2010 WL 1795952, *4–5 (Tex.App.-Beaumont May 6, 2010, pet. denied) (mem. op.); *Great West. Drilling, Ltd. v. Alexander,* 305 S.W.3d 688, 697–98 (Tex.App.-Eastland 2009, no pet.); *Allstate Ins. Co. v. Garcia,* No. 13–02–092–CV, 2003 WL 21674766, *2 (Tex.App.-Corpus Christi Jul. 18, 2003, no pet.) (mem. op.). In this case, the trial court may have determined that Manning's counsel did not make statements in the pleading which he knew to be false. *See* Tex.R. Civ. P. 13. The trial court may have also determined that Manning's counsel did not persist in pursuing Manning's claims against Bu-

chanan and Flowers Davis. *See* Tex. Civ. Prac. & Rem.Code Ann. § 10.004(b) ("The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated."). Considering the trial proceedings, the trial court is in a better position than this Court to decide whether to impose sanctions. We see no abuse of discretion by the trial court. We overrule the issue.

### FRIVOLOUS APPEAL

Manning argues that the cross-appeal was not timely filed and it is thereby frivolous and asks that sanctions be imposed. *See* Tex.R.App. P. 45. The order denying the motion for sanctions was not an appealable interlocutory order. *See generally* Tex. Civ. Prac. & Rem.Code Ann. § 51.014 (West 2008). The trial court did not sever that part of the case into a separate cause. *See generally* Tex.R. Civ. P. 41. The final judgment was signed on April 1, 2010. Manning filed a notice of appeal on April 26, 2010. Enbridge filed a notice of appeal on April 27, 2010. Enbridge's notice of appeal was amended on May 10, 2010, to add Buchanan and Flowers Davis as appellants. Buchanan and Flowers Davis filed a notice of appeal within two weeks of the filing of the first notice of appeal; the notice of appeal was timely even if it did not relate back to the date Enbridge filed its notice of appeal. *See* Tex.R.App. P. 26.1(d). Manning's request is denied.

We affirm the trial court's judgment. *See* Tex.R.App. P. 43.2(a). Each party shall pay the costs for its own appeal. *See* Tex.R.App. P. 43.4.

AFFIRMED.