In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00040-CV
_____

SAM-CONSTRUCTION SERVICES, LLC, Appellant

V.

MARICELA SALAZAR-LINARES, Appellee

On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B190455-C

## MEMORANDUM OPINION

When an "action" is filed arising "out of the provision of professional services" by a licensed or registered engineer, Texas law requires the plaintiff to file an affidavit from a third-party-licensed professional engineer describing (1) the theory of recovery, (2) the negligence or other action, error, or omission of the engineer in providing the professional

service, and (3) "the factual basis for each such claim."[1] Unless the statute of limitations expires in ten days, the affidavit, when required, must be filed "with the complaint[.]"[2] If the action arises out of the provision of professional services by a licensed engineer and the plaintiff fails to file the affidavit required by the statute, the statute provides: "A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant."[3]

The parties to this appeal disagree about whether the action the plaintiff filed against the defendant is one that arose from the defendant's provision of professional services through its licensed engineer. In March 2019, Martin Salazar-Linares suffered fatal injuries while working as a manual laborer on a construction site in Orange County, Texas. Martin's wife, Maricela Salazar-Linares, brought a wrongful death and survival action on behalf of herself and her husband's estate against several defendants, including SAM-Construction Services, LLC (SAM), a firm that, as is relevant here, employed a licensed engineer. SAM moved to

---

[1]Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a), (b).
[2]*Id.* § 150.002(a), (c).
[3]*Id.* § 150.002(e).

dismiss the complaint Maricela filed against it because she failed to include an affidavit from a third-party licensed professional engineer with the complaint. When the trial court ruled on SAM's motion, it didn't dismiss Maricela's complaint; instead, the court dismissed some but not all of Maricela's claims. Subsequently, SAM filed this interlocutory appeal.[4]

On appeal, the parties disagree about whether Maricela's "action" arises from SAM's "provision of professional services by a licensed or registered professional" on the construction site where Martin was killed.[5] Because the allegations in Maricela's Second Amended Petition show that her claim constitutes an action for damages arising from SAM's provision of professional services by SAM's licensed engineer, we conclude the Certificate of Merit Statute required Maricela to file an affidavit from a licensed third-party engineer with her Second Amended Petition. Because she didn't do so, we hold the trial court erred in failing to dismiss all of Maricela's claims against SAM, as that's the relief

---

[4]*Id.* § 150.002(f).
[5]*See id.* § 150.002(a).

required by the statutory scheme adopted by the legislature when a claim is based on alleged errors or omissions by the defendant in the provision of professional services by the defendant, a licensed or professional engineer, or the defendant engineering firm.[6]

For the reasons explained below, we reverse the trial court's February 2, 2023 order granting SAM's motion in part and denying SAM's motion in part. We remand the cause to the trial court, and we instruct the trial court to sign an order dismissing Maricela's action—her petition—against SAM. And when ordering Maricela's petition against SAM dismissed, the trial court may order the dismissal to be with or without prejudice, the options given to the trial court by the Certificate of Merit Statute.[7]

## Background

In February 2019 through a written work authorization, the Texas Department of Transportation (TxDoT) gave SAM the responsibility to "perform engineering services" on the project at issue in this suit. The

---

[6]*Id.* § 150.002(e).
[7]*Id.*

4

TxDot agreement with SAM on this project was subject to the terms of a master contract, signed in 2016, and titled "Contract for Engineering Services." The master contract includes a general description of the "engineering services" the State wanted SAM to provide. The master contract describes the services "as Construction Engineering Inspection (CEI) services to assist the State in managing its construction operations before, during, and after the construction of improvements[.]" Under the terms of the master contract: "All engineering services provided by the Engineer will conform to standard engineering practices and applicable rules and regulations of the Texas Engineering Practices Act and the rules of the Texas Board of Professional Engineers."[8]

In March 2019, Martin was electrocuted while working as a manual laborer on a TxDot construction project, which involved work that various contractors were performing on Interstate 10 (I-10). The company Martin was working for was working on installing light poles along a sidewalk, which ran next to the access road to I-10. On appeal, it's undisputed that Martin was electrocuted when a fellow employee, operating a side-boom

---

[8]The master contract expressly defines the term *Engineer* as SAM.

5

tractor and using the tractor, lifted a light pole into the air and caused the pole to contact an overhead power line. When the pole was energized by the line, electricity flowed through the tractor to the ground, electrocuting Martin while he was leaning against the tractor and standing on the ground.

Third Coast Services, LLC (Third Coast) is the contractor that TxDot hired to complete the construction work on the sidewalks beside the access road. Third Coast contracted with two other companies, South Texas Illumination, LLC (South Texas Illumination) and Flex Supply, LLC (Flex Supply) to perform part of that work.

At first, Maricela brought a wrongful death and survival action on behalf of herself and her husband's estate against Third Coast, South Texas Illumination, and Flex Supply.[9] According to Maricela's original petition, Martin was a construction employee "of both" South Texas and Flex Supply.

---

[9]Third Coast, South Texas, and Flex Supply are parties to the case in the trial court but are not parties to SAM's interlocutory appeal.

In March 2021, Maricela amended her petition, adding SAM and some other defendants, which are not relevant to this appeal, to her suit.[10] The parties dispute whether the allegations in Maricela's First Amended or Second Amended Petition are the allegations relevant to analyzing whether her claims arise out SAM's provision of professional services by its licensed engineer. For that reason, we will discuss the relevant allegations in both petitions. As to Sam, the Plaintiff's First Amended Petition alleges:

> At all relevant times, Defendant Sam . . . was hired to inspect the illumination project being performed by all Defendants. According to its website, SAM 'provide[s] construction services solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications'—which, upon information and belief, it was hired to do and/or purported to do in this accident. SAM, according to its website, 'supports clients and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets' and ensures clients receive the foundational data and management support they need to successfully complete construction work'—which, upon information and belief, it

---

[10]The First Amended Petition also named SAM-Construction Services, LLC, SAM, LLC, and Sam Construction and Investment, Inc. as defendants. These entities answered, but Maricela nonsuited them on November 3, 2021. When Maricela filed her Second Amended Petition, she did not add them back to her suit.

was hired to do and/or purported to do in this accident. Moreover, SAM claims it 'provides construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget….[o]ur program managers are already familiar with your state and local requirements…[and] work with contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance'—which, based upon information and belief, it was hired to do and/or purported to do in this accident.

As to SAM, the First Amended Petition alleges more than fourteen theories of negligence.[11] As alleged in the First Amended Petition, SAM's agents, servants, and employees were negligent in:

(1) "fail[ing] and neglect[ing] to properly park the side-boom tractor or crane, fail[ing] and neglect[ing] to have the side-boom tractor or crane under proper control, and fail[ing] to obtain or maintain the necessary licensure, permits or certifications to operate said side-boom tractor or crane[;]"

(2) "[p]roviding construction services solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications;"

(3) "[s]upporting [South Texas Illumination, Flex Supply, and Third Coast], clients and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets and ensuring [they] and clients

---

[11]To simplify the opinion, the paragraph numbers we have used in the opinion for the allegations in the petition are not identical to the paragraph numbers used in the plaintiff's petition.

receive[d] the foundational data and management support they need[ed] to successfully complete construction work;"

(4) "[p]roviding construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget and ensuring SAM's program managers are already familiar with contractor, municipal, state, and local requirements and are followed;"

(5) "[w]orking with [South Texas Illumination, Flex Supply, and Third Coast], to keep communication open, maintain project controls, and set clear expectations for quality and performance;"

(6) "[p]roviding adequate training for its employees, subcontractors and agents in the use of side-boom tractors or cranes;"

(7) "[p]roviding adequate training for its employees, subcontractors and agents in working near extremely dangerous high-voltage electric powerlines;"

(8) [a]dequately supervising employees, subcontractors and agents when working with extremely dangerous equipment;"

(9) [w]arning its employees, subcontractors and agents of the dangers of working near extremely dangerous equipment;"

(10) "[w]arning its employees, subcontractors and agents of the danger of working in and around high voltage electric powerlines;"

(11) "[i]instructing its employees, subcontractors and agents in the proper safety procedures when working near extremely dangerous equipment;"

(12) "[e]nsuring its employees, subcontractors and agents [were] properly licensed to operate side-boom tractors or cranes;"

(13) "[p]reparing and providing safety policies or procedures;"

(14) "[o]ther acts of omission and/or commission to be specified after an adequate time for discovery or at the time of trial;" and

(15) the gross negligence of Sam in negligently hiring, retaining, supervising, and inspecting "the work of South Texas Illumination and its employees and/or servants."

9

After it was served with Maricela's First Amended Petition, SAM, relying on the Certificate of Merit Statute, moved to dismiss.[12] In its motion, Sam alleged that it was "a professional engineering firm that provides professional engineering services." It also alleged that the plaintiff's claims for damages were based on SAM's "provision of professional services." Noting that Maricela didn't file an affidavit from a third-party licensed engineer with her First Amended Petition, SAM argued that the Certificate of Merit Statute gave it the right to have Maricela's claims dismissed.

When Maricela responded to SAM's motion, she argued that SAM's liability for Martin's death arose from SAM's conduct "in the capacity of construction management services—not in the practice of engineering." According to Maricela's response, SAM's liability was not based on any "errors or omissions in providing professional engineering services." Instead, Maricela argued SAM's liability arose from its "failure to provide a safe work environment and fail[ure] to warn employees, including but

---

[12]*Id*. § 150.002.

10

not limited to Martin[], of the associated dangers with overhead powerlines and the construction zone in question."

Following a hearing on SAM's motion in October 2021, the trial court signed an order that granted in part and denied in part SAM's motion to dismiss. The trial court's order didn't specify what claim or claims were dismissed; instead, the order the trial court signed recites: "This Court GRANTS the motion as to Plaintiff's claims arising out of the [SAM's] provision of professional engineering services or the practice of engineering[.]" The order was also vague as to the claims the trial court allowed to remain in the case, as the order recites: "This Court DENIES the motion as to all remaining Plaintiff's claims that do not fall within [SAM's] provision of professional engineering services."

In November 2021, Maricela non-suited her claims against SAM. A day later and based on the notice of nonsuit against SAM, the trial court signed an order dismissing the plaintiff's "case and all claims" against SAM "without prejudice to the refiling of same." When Third Coast saw that the trial court had dismissed SAM from the suit, it moved to

designate SAM as a responsible third party.[13] In its motion, Third Coast alleged that SAM had an employee with the authority on the job site where Martin was killed who knew or should have known that Martin's employer was performing the work in a manner that presented a potential hazard. Accordingly, Third Coast alleged, SAM's representative could have stopped the work or redirected it before Martin's fatality occurred.

Even though Maricela opposed Third Coast's motion to designate SAM as a responsible third party, the trial court granted Third Coast's motion to designate SAM as a responsible third party in April 2022.[14] In September 2022, just five months later, Maricela amended her petition again by filing a Second Amended Petition, and she brought SAM back into the lawsuit. In Maricela's Second Amended Petition, she reasserted all the allegations in her First Amended Petition. In addition, Maricela's Second Amended Petition includes two new paragraphs that are not in

---

[13]*See id.* § 33.004 (Designation of Responsible Third Party).
[14]Maricela's pleadings opposing the designation are not in the Clerk's Record, but the trial court's order granting Third Coast's motion reflects that the motion was opposed.

her First Amended Petition. The first of the new paragraphs, paragraph 18, states:

> At no point in time relevant to the instant matter did SAM provide 'professional services.' For clarity, this suit does not involve 'damages arising out of the provision of professional services by a licensed or registered professional,' e.g., an engineer, as such is defined in TEX.CIV. PRAC. & REM. CODE Chapter 150. No engineering services were ever provided by SAM.

The other new paragraph in the Second Amended Petition—paragraph 19—quotes testimony provided at a deposition taken by the attorney from the plaintiff's firm, which the attorney elicited from a corporate representative presented by Third Coast. According to Third Coast's corporate representative, Josh Jakubik, the job where Martin's fatality occurred "was engineered[;]" however, SAM was not there that day in its capacity as an engineer but was there inspecting safety on the scene.

On September 21, 2022, SAM filed supplemental objections to the motion to dismiss the plaintiff's petition, arguing that, based on what the trial court said in the October 2021 hearing, the trial court's order denying its motion should reflect that the trial court denied its motion "*in toto*." SAM also claimed in the supplemental motion that the trial

13

court's refusal to sign a clear order that dismissed the plaintiff's action against it was "an artificial attempt to interfere with SAM['s] statutorily guaranteed right to seek appellate review" from the trial court's ruling on SAM's motion, a ruling that SAM "believes to be incorrect." The supplemental motion concludes:

> Either the claims by the Plaintiff against [SAM] arise out of [SAM's] engineering services, or they do not. The parties deserve and are entitled to an order either granting or denying the motion.

In October 2022, the trial court conducted another hearing on SAM's supplemental motion to dismiss. In this hearing, the trial court orally denied SAM's motion but following the hearing, didn't sign a written order. Consequently, the only "ruling" of record on SAM's motion to dismiss was the ruling SAM obtained on the Amended Motion to Dismiss, that is the motion it filed in August 2021 addressing the allegations in Maricela's First Amended Petition. Consequently, SAM filed a petition for mandamus seeking to require the trial court to rule on its motion.

In its petition, filed in November 2022, SAM argued the trial court abused its discretion in refusing to provide the parties with a clear

14

written ruling on SAM's motion. According to SAM's petition, SAM claimed that by signing an order partially granting and partially denying SAM's motion and by subsequently refusing SAM's request to dismiss Maricela's petition, the trial court had refused to rule on the merits of SAM's motion, depriving SAM of an adequate remedy even if it were to later exercise its right appeal after the case was tried.[15]

In December 2022, we conditionally granted SAM's petition for mandamus relief.[16] We concluded that, by failing to specify what claims were dismissed, the trial court's October 2021 order granting SAM's motion failed to allow a court to determine whether the action that remained was still one for damages arising from SAM's provision of professional services by its licensed engineer.[17] We suggested that the trial court "vacate its order of October 14, 2021.[18]

After we granted SAM's petition for mandamus relief, the parties returned to the trial court. There, SAM filed a motion in which it

---

[15]*See In re SAM-Constr. Servs., LLC*, No. 09-22-00363-CV, 2022 WL 17844022, at *1 (Tex. App.—Beaumont Dec. 22, 2022, orig. proceeding).
[16]*Id.* at *8.
[17]*Id.*
[18]*Id.*

requested the trial court to "enter an order granting [SAM's] Amended Motion to Dismiss, or [to] alternatively, [ ] issue a new order definitively ruling on the merits of the Amended Motion to Dismiss[.]" On February 2, 2023, the trial court vacated its order and signed a new order. The trial court signed a new order, and the new order—for the first time—addressed the allegations in Plaintiff's Second Amended Petition.[19] Yet the trial court's order doesn't simply grant or deny SAM's motion. Instead, the trial court signed the proposed order that was prepared by the plaintiff's firm, an order granting SAM's motion in part and denying it in part. This time, however, the order strikes some words and one paragraph from the Plaintiff's Second Amended Petition, so to that degree the order is somewhat more specific. As amended by the trial court's order, the Second Amended Petition (with the strikethroughs for reference but not for content) now states:[20]

---

[19]Tex. R. Civ. P. 65 (Substituted Instrument Takes Place of Original); *FM P'ship. v. Bd. of Regents*, 255 S.W.3d 619, 633 (Tex. 2008) ("[A]mended pleadings and their contents take the place of prior pleadings.").

[20]The numbers used for the paragraphs in the opinion track the numbers used earlier for these same paragraphs in the First Amended

(2) Providing construction services solutions, including contract administration, ~~construction engineering and inspection~~, observation, quality assurance and quality management, and the development of quality manuals and specifications;

(4) Providing ~~construction teams around the nation the construction engineering~~ and inspection ~~oversight they need to keep projects compliant, on time, and on budget~~ and ensuring SAM's program managers are already familiar with contractor, municipal, state, and local requirements and are followed;

(14) ~~Other acts of omission and/or commission to be specified after an adequate time for discovery or at the time of trial.~~

Apart from these strikethroughs, SAM's Amended Motion to Dismiss, as supplemented by the objections that SAM filed after Maricela filed her Second Amended Petition, was denied. The day the trial court signed the order with the strikethroughs, SAM filed its notice of interlocutory appeal.[21]

Standard of Review

At issue is whether Maricela's petition triggered the requirements of Chapter 150 of the Texas Civil Practice and Remedies Code, which we

___

Petition, as the allegations (except for the strikethroughs, since those words are not crossed out in the First Amended Petition) are identical.

[21]*See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(f).

will refer to as the Certificate of Merit Statute.[22] We review a trial court's

order denying a motion to dismiss for abuse of discretion.[23] A trial court

abuses its discretion when it acts arbitrarily or unreasonably or acts

without reference to any guiding rules and principles.[24] "The mere fact

that a trial judge may decide a matter within his discretionary authority

in a different manner than an appellate judge in a similar circumstance

does not demonstrate that an abuse of discretion has occurred."[25]

When the issue requires a court to interpret a statute, we conduct

that review de novo.[26] When construing the Certificate of Merit statute,

we start by applying the "plain and common meaning of the statute's

---

[22]*Id*. §§ 150.001—150.004.
[23]*Pipkins v. Labiche Architectural Grp., Inc.*, 661 S.W.3d 842, 848 (Tex. App.—Beaumont 2022, pet. denied).
[24]*See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).
[25]*Id*. at 242.
[26]*See Tex. W. Oaks Hosp. LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012) (explaining that the nature of claims the Legislature intended to include under the umbrella of an act that requests an expert report is "a legal question," reviewed "de novo").

words."[27] In construing the statute, our goal is to "determine and give effect to the Legislature's intent[.]"[28]

Analysis

In SAM's first issue, it argues the trial court erred in failing to dismiss the plaintiff's claims against it because Maricela never filed an affidavit of a licensed engineer as required by Chapter 150. SAM contends that in our review, we should look to the allegations in Maricela's First Amended Petition because those are the allegations Maricela filed when SAM initially filed its motion to dismiss.

No one disputes that if the Certificate of Merit Statute applies, the statute requires the affidavit of a licensed third-party engineer to be "file[d] with the complaint."[29] To be sure, in the ordinary case not involving a dismissal of the engineering defendant from the suit, we have

---

[27]*Id*. (cleaned up).

[28]*Id*.

[29]*See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (requiring the affidavit to be filed "with the complaint"); *AMEC Foster Wheeler USA Corp. v. Goats*, No. 09-18-00477-CV, 2019 WL 3949466, at *3 (Tex. App.—Beaumont Aug. 22, 2019, no pet.) (mem. op.). ("A certificate of merit must be filed with the first-filed complaint if the claims arise out of the provision of professional services by a licensed or registered engineer.").

said that we look to the plaintiff's initial complaint against the defendant engineer or engineering firm when determining whether the claim for damages that the plaintiff filed is one that arises from the provision of professional services by the licensed engineer.[30]

This case, however, has an unusual procedural history, as Maricela nonsuited her claims against SAM eight months after she filed her First Amended Petition. Those claims were nonsuited by written order, an order the trial court signed in November 2021. Consequently, Maricela's Second Amended Petition contains Maricela's live claims, making them the first claims against SAM after her initial claims were voluntarily dismissed. Moreover, the Certificate of Merit statute contemplates that a case against an engineer or engineering firm may be dismissed without prejudice, so we presume the legislature intended to allow plaintiffs the opportunity to refile a suit by alleging claims narrowly to raise theories of liability that would avoid making the plaintiff's action one that arises

---

[30]*See Goats*, 2019 WL 3949466, at *3.

from the engineer or engineering firm's provision of professional services.[31]

For example, take an engineering firm that designed an engineering plan for a scaffold for a construction company building a skyscraper. One of the engineering firm's engineers drives up to the skyscraper, hits the scaffold, causing the scaffold to collapse. Several workers on the scaffold are seriously injured as a result. The workers could sue the engineer and the engineer's firm on a theory of negligence based on the manner the engineer drove the car—in other words, avoid filing an action that alleged an engineering claim. Or the plaintiffs could sue the engineer and engineering firm claiming the scaffold was defectively designed and the design contributed to the scaffold's collapse. In that case, those allegations would trigger the Certificate of Merit Statute and require the plaintiffs to file an affidavit from a third-party licensed engineer. Last, the plaintiffs could sue the engineer and the engineering firm on both theories, that the engineer was negligent in the manner the engineer drove the car and on a theory that the scaffold was

---

[31]*See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e).

defectively designed. In that case, the fact the petition included an action for damages on an engineering theory would trigger the Certificate of Merit Statute and require the plaintiffs to file an affidavit from a licensed third-party engineer. If they did not, the petition would be required to be dismissed.

Given that Maricela's case includes a dismissal of her suit, we will focus on the allegations in her live pleadings, her Second Amended Petition to decide whether her allegations triggered the Certificate of Merit Statute and required her to file an affidavit with her petition of a third-party licensed engineer.

Except for the two new paragraphs in Maricela's Second Amended Petition, the allegations in her Second Amended Petition largely overlap those she made against SAM in her First Amended Petition. One of the two new paragraphs in the Second Amended Petition alleges that Maricela's claim for damages doesn't arise out of SAM's provision of professional services by a licensed or registered professional. In the second new paragraph, Maricela cited testimony from Josh Jakubik to the effect that the job where Martin was working when he was killed was

22

"engineered," but that SAM was on the job site to inspect the safety of the scene and wasn't there as an engineer.

On appeal, Maricela explains that she isn't conceding that her claims for damages against SAM are claims that arose from SAM's providing engineering services to TxDoT. Instead, she argues that as to SAM, her claims are based on the duties SAM owed to Martin to provide him with a safe workplace, duties Maricela argues are not duties that are based on SAM's status as a firm that employs a licensed engineer. In her brief, Maricela construes the claims in her petition narrowly, asserting her theories are limited to claims like "negligent supervision, negligent instruction, and failure to warn about working with or near extremely danger[ous] equipment and high voltage electric powerlines[.]"

Even though Maricela argues her actions are not based on a theory that her damages arise from SAM's providing professional services to TxDoT, paragraph seventeen of her petition—a paragraph the trial court never struck or altered in any way—alleges:

17. At all relevant times, Defendant Sam-Construction Services LLC (hereinafter, "SAM") was hired to inspect the illumination project being performed by all Defendants. According to its website, SAM 'provide[s] construction services solutions,

including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications'—which, upon information and belief, it was hired to do and/or purported to do in this accident. SAM, according to its website, 'supports clients and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets' and "ensures clients receive the foundational data and management support they need to successfully complete construction work"—which, upon information and belief, it was hired to do and/or purported to do in this accident. Moreover, SAM claims it 'provides construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget….[o]ur program managers are already familiar with your state and local requirements…[and] work with contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance'—which, based on information and belief, it was hired to do and/or purported to do in this accident.

As to SAM, Maricela adopted paragraph 17 by reference in her Second Amended Petition four times, once each time Maricela pled her actions against SAM for vicarious liability, negligence, negligence per se, and gross negligence.[32]

---

[32]*See* Tex. R. Civ. P. 58 (Allowing statements in pleadings to be adopted by reference).

24

Normally, resolving whether the allegations in a pleading trigger the Certificate of Merit Statute requires that a court decide two things. First, the court must decide whether the petition alleges a claim that involves damages against a licensed engineer or a firm that employed a licensed engineer who practiced with the firm at a time relevant to the dispute with the entity named as the defendant in the suit.[33] Second, the court must determine whether, under the allegations in the plaintiff's petition, the plaintiff's action seeks to recover damages that arise out of the provision of professional services by the licensed professional.[34] Here, the first step of that test is undisputed—no one claims SAM at the time relevant to the dispute wasn't a licensed engineering firm under the definition of *licensed professional* as defined by the Certificate of Merit Statute.[35]

Under the Certificate of Merit Statute, the term *practice of engineering* carries the meaning "assigned by Section 1001.003,

---

[33]Tex. Civ. Prac. & Rem. Code Ann. § 150.001(-c).
[34]*Id.* § 150.002(a).
[35]*Id.*

25

Occupations Code."[36] Under the Occupations Code, the term *practice of*

*engineering*:

> means the performance of or an offer or an attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work.[37]

The Statute then defines the *practice of engineering* by providing a non-

exhaustive list of examples that includes:

> (1) consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping;

> (2) design, conceptual design, or conceptual design coordination of engineering works or systems;

> (3) development or optimization of plans and specifications for engineering works or systems;

> (4) planning the use or alteration of land or water or the design or analysis of works or systems for the use or alteration of land or water;

> (5) responsible charge of engineering teaching or the teaching of engineering;

---

[36]*Id.* § 150.001(3).

[37]Tex. Occ. Code Ann. § 1001.003(b).

(6)  performing an engineering survey or study;

(7) engineering for construction, alteration, or repair of real property;

(8)  engineering for preparation of an operating or maintenance manual;

(9)  engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;

(10)  a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature;

(11) providing an engineering opinion or analysis related to a certificate of merit under Chapter 150, Civil Practice and Remedies Code; or

(12) any other professional service necessary for the planning, progress, or completion of an engineering service.[38]

As we see it, Maricela argues that her liability theory is narrow, not broad. Essentially, she claims her pleadings allege that SAM's employees negligently exercised or failed to exercise control over Martin's work,

[38] *Id.* § 1001.003(c).

27

which created a dangerous condition or constituted the negligent activity that she claims caused Martin's death.[39] But given the broad allegations in Maricela's Second Amended Petition, viewing her pleadings as having pleaded only a retained right of control theory is a revisionist view of what she pleaded, a view requiring this Court to ignore what the words in her pleadings say.

For instance, Maricela's Second Amended Petition alleges SAM was negligent in "providing construction services" and that its negligence included "preparing and providing safety policies and procedures." Those services weren't limited to services that occurred onsite. Second, Maricela complained that SAM was negligent in "the development of quality manuals and specifications." That service also didn't occur solely on the site where Martin's electrocution occurred. We flatly reject the appellee's argument that her claims were narrowly pleaded and limited to a claim that SAM negligently exercised a retained right of control over Martin's work.

---

[39] *See generally Clayton W. Williams, Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997).

Third, even if it's possible to allege a negligent exercise of a retained right of control theory without triggering the Certificate of Merit Statute when suing an engineering firm, an issue we need not decide, the pleadings Maricela filed are far too broad to have accomplished that here. The Occupations Code's definition of the *practice of engineering* includes "consultation," "planning," and "engineering for program management."[40] And for engineered jobs—which the Plaintiff's Second Amended Petition alleges this was—the *practice of engineering* includes "monitor[ing] for compliance with drawing or specifications."[41] Last, and as relevant to the plaintiff's allegations, the *practice of engineering* includes "engineering for preparation of an operating or maintenance manual."[42]

Given the broad definition the legislature gave to the *practice of engineering*, a plaintiff who wishes to avoid triggering the Certificate of

---

[40]Tex. Occ. Code Ann. § 1001.003(c)(1).

[41]*Id.* § 1001.003(c)(9).

[42]We have focused on these allegations for convenience and do not intend to imply that there aren't other allegations in the petition that would also trigger the third-party affidavit requirement in Chapter 150.002.

Merit Statute should plead their claims carefully to avoid pleading an action for damages that arises from the provision by the engineer or the engineer's firm of professional services by the firm's licensed engineer. We don't doubt that's possible in some cases depending on the facts of how the accident occurred. But in this case, the plaintiff had more than one opportunity to narrow her pleadings and avoid pleading a claim against SAM based on an engineering theory when she did not.

We conclude the allegations in the plaintiff's Second Amended Petition required the claimant to file an affidavit of a licensed third-party engineer.[43] It's undisputed that no affidavit was filed.

---

[43]Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).

The Remedy

Subsection 150.00(2)(e) provides the consequences for failing to file the required licensed engineer's affidavit with the petition.[44] "A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant."[45] The "complaint" is defined in the statute as "any petition or other pleading, which, for the first time, raises a claim against a licensed or registered professional for damages arising out of the provision of professional services by the licensed or registered professional."[46] As we've explained, we have construed "for the first time" to mean the first time following the dismissal of the claim based on the procedural history in this appeal.

The remedy prescribed by the Certificate of Merit Statute doesn't reflect that the legislature expected trial courts to engage in battlefield triage when deciding whether to dismiss. That is, the legislature didn't intend to allow trial courts to selectively dismiss some claims while

---

[44]*Id.* § 150.002(e).
[45]*Id.*
[46]*Id.* § 150.001(1-b).

31

allowing others to proceed.[47] We have reached that conclusion because the statute applicable to healthcare liability claims, Chapter 74.351 of the Texas Civil Practice and Remedies Code, requires that a trial court dismiss the *claim* when the required report isn't filed, but the Certificate of Merit Statute requires that a trial court dismiss *the complaint*.[48] Chapter 150 defines *complaint* as "any petition or other pleading which, for the first time, raises a claim against a licensed or registered professional for damages arising out of the provision of professional services by the licensed or registered professional."[49]

While dismissing *the complaint* seems harsh, particularly in cases where the petition may include just one claim that triggers Chapter 150, our role isn't to add language to a statute by redefining *complaint* to mean a claim. Rather, we must "take statutes as we find them,

---

[47]*Id.* § 150.002(e).

[48]*Compare id.* § 74.351(b)(2) (authorizing a court to dismiss "the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim"), *with id.* § 150.002(e) (authorizing a court to dismiss "the complaint against the defendant").

[49]*Id.* § 150.001(1-b).

presuming the Legislature included words that it intended to include and omitted words it intended to omit."[50]

When Maricela filed a Second Amended Petition with allegations that triggered the Certificate Merit Statute without filing the affidavit the Statute requires, SAM had a statutory right to have the trial court dismiss Maricela's complaint.[51] We hold the trial court abused its discretion by denying SAM's motion to dismiss.[52]

## Conclusion

When reversing a trial court's decision, we are required to render the judgment the trial court should have rendered.[53] SAM asks this Court to "render a judgment of dismissal on all claims against SAM[.]" Yet as SAM recognizes, it remains in the trial court's discretion to decide whether the plaintiff's claims against SAM should be dismissed with prejudice.[54] For that reason, we reverse the trial court's order of February

---

[50]*Tex. Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*, 671 S.W.3d 929, 951 (Tex. 2023) (cleaned up).
[51]Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e).
[52]*Id.* §§ 150.001(1-b), 150.002(a), (e).
[53]Tex. R. App. P. 43.3.
[54]Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e).

2, 2023. We remand the case to the trial court, and we instruct the trial court to sign an order dismissing every claim Maricela asserted in her Second Amended Petition against SAM. The court may dismiss the claims against SAM with or without prejudice.

REVERSED AND REMANDED.


HOLLIS HORTON
Justice

Submitted on August 21, 2023
Opinion Delivered December 14, 2023

Before Golemon, C.J., Horton and Johnson, JJ.